SWZ, INC., Appellant,

v.

**BOARD OF ADJUSTMENT OF THE CITY OF FORT WORTH,**
Appellee.

No. 2–97–220–CV

Court of Appeals of Texas,
Fort Worth.

Jan. 28, 1999.

John L. Gamboa, Fort Worth, for appellant.

Theodore P. Gorski, Jr., Marcella Olson, Fort Worth, for appellee.

Before DAY, LIVINGSTON, and BRIGHAM, JJ.

## OPINION

WILLIAM BRIGHAM, Justice.

### INTRODUCTION AND PROCEDURAL HISTORY

SWZ, Inc. appeals from the denial of its application for a specialized certificate of occupancy to operate a sexually-oriented business at 1500 South University Drive in Fort Worth (the Premises). We affirm.

As authorized by the local government code, Fort Worth has established distance regulations for sexually-oriented businesses. *See* TEX. LOC. GOV'T CODE ANN. § 243.006(a) (Vernon Supp.1999); FORT WORTH, TEX., CITY CODE app. A, Ord. 3011, § 18A(B)(2). Section 18A prohibits their location within 1000 feet of a church, school, public park, residentially-zoned property, designated historical or cultural district, or other sexually-oriented business. After a hearing, the City of Fort Worth's Board of Adjustment (the Board) upheld a decision by the city's Department of Development to deny SWZ's application. The Board found that:

- the Premises are located within 1000 feet of a church, and SWZ did not establish a right to a variance;
- the Premises are located within 1000 feet of a public park, and SWZ did not establish a right to a variance; and
- the Premises are located within 1000 feet of residentially-zoned property.

SWZ appealed the Board's decision to a Tarrant County district court. *See* TEX. LOC. GOV'T CODE ANN. § 211.011(c) (Vernon 1988); *Davis v. Zoning Bd. of Adjust.,* 865 S.W.2d 941, 942 (Tex.1993). Both SWZ and the Board moved for summary judgment in the district court. SWZ asked the court to reverse the Board's decision to deny the certificate of occupancy, and the Board sought affirmance of its decision on each of the above grounds. The district court granted the Board's motion and denied SWZ's; SWZ appeals.

The summary judgment for the Board does not specify the ground on which it is based. Therefore, we will affirm it if any of the theories set forth in the Board's motion support the judgment. *See Harwell v. State Farm Mut. Auto. Ins. Co.,* 896 S.W.2d 170, 173 (Tex.1995).

### STANDARD OF REVIEW

■ The Board is a quasi-judicial body, and the district court sits only as a court of review by writ of certiorari. *See Board of Adjust. v. Flores,* 860 S.W.2d 622, 625 (Tex.

App.—Corpus Christi 1993, writ denied); TEX. LOC. GOV'T CODE ANN. § 211.011(c). The only issue for determination in a writ of certiorari proceeding is the legality of the Board's order. *See West Texas Water Refiners, Inc. v. S & B Beverage Co.*, 915 S.W.2d 623, 626 (Tex.App.—El Paso 1996, no writ). A legal presumption exists in favor of the Board's order, and the party attacking it has the burden of establishing its illegality. *See Flores*, 860 S.W.2d at 625.

■ To establish that an adjustment board's order is illegal, the contesting party must make a very clear showing that the board abused its discretion, i.e., acted arbitrarily and unreasonably, without reference to any guiding rules or principles. *See Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986); *City of San Angelo v. Boehme Bakery*, 144 Tex. 281, 190 S.W.2d 67, 70 (1945) (construing prior statute); *Flores*, 860 S.W.2d at 625. The district court cannot put itself in the adjustment board's position or substitute its discretion for that of the board. *See Flores*, 860 S.W.2d at 625; *see also Downer*, 701 S.W.2d at 241–42.

### PREMISES WITHIN 1000 FEET OF A CHURCH

■ The Board found that the Premises were located within 1000 feet of the San Mateo Catholic Church (the Church). In its third point, SWZ challenges this finding.

The zoning ordinance defines "church" as "a building in which persons regularly assemble for religious worship and activities intended primarily for purposes connected with such worship or for propagating a particular form of religious belief." FORT WORTH, TEX., CITY CODE app. A, Ord. 3011, § 18A(G)(9). The ordinance further provides that measurement of the 1000–foot distance "shall be made in a straight line, without regard to intervening structures or objects, from the nearest portion of the property line of an existing church ... to the nearest property line of the property sought to be used as a sexually-oriented business." *Id. §* 18A(B)(3).

■ Municipal ordinances are interpreted by the same rules of construction that apply to statutes. *See Heard v. City of Dallas*, 456 S.W.2d 440, 443 (Tex.Civ.App.—Dallas 1970, writ ref'd n.r.e.). In construing a municipal ordinance, a court's primary duty is to carry out the intentions of the municipal legislative body. *See Bolton v. Sparks*, 362 S.W.2d 946, 951 (Tex.1962); *City of Galveston v. Giles*, 902 S.W.2d 167, 170 (Tex.App.—Houston [1 st Dist.] 1995, no writ). Contemporaneous construction of an ordinance by the agency charged with its enforcement is entitled to serious consideration, so long as the construction is reasonable and does not contradict the plain language of the ordinance. *See State v. Public Util. Comm'n*, 883 S.W.2d 190, 195 (Tex.1994); *Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex.1993); *see also* TEX. GOV'T CODE ANN. § 311.023(6) (Vernon 1998) ("In construing a statute ... a court may consider ... [the] administrative construction of the statute. . . .").

The record shows that the Church owns several contiguous lots, two of which contain a hall used for religious education classes, prayer meetings, and social events for parishioners; two of which contain a sanctuary used for religious worship services; and three of which make up an open area containing carnival-type booths used for church festivals. The hall is located on the easternmost portion of the church property, at the corner of Lovell Avenue and Pulido Street. It is undisputed that the hall is located within 1000 feet of the Premises. The carnival booths are erected in the open space between the community hall and the sanctuary. The sanctuary is located on the western-most part of the church property, at the corner of Lovell Avenue and Photo Street. The sanctuary and booths are outside the 1000–foot area.

Sister Felippa Lara, the Church's pastoral administrator, testified that the hall is used for religious classes and meetings, prayer groups, and religious activities for youths. Sister Lara also testified that people regularly meet in the hall for religious worship. All of these activities are centered around the Roman Catholic faith. Thus, the hall falls

well within the ordinance's definition of a church: people regularly assemble there for "activities intended primarily for purposes connected with [religious] worship or for propagating a particular form of religious belief." The mere fact that the hall and the sanctuary are not physically connected or part of the same structure is irrelevant to our inquiry—as long as the hall meets the city's definition of a "church."

Sister Lara further testified that social events for adult parishioners and parish youth groups are conducted in the hall. For instance, a dance for young parishioners was held near Christmas. Also, fund-raising celebrations are sometimes held in the area between the hall and the sanctuary where the carnival-type booths were located, and a barbecue dinner is served in the hall in connection with the celebrations.[1] But holding some social events in the hall does not negate the fact that it is part of a church. A common-sense reading of the city's definition of "church" merely requires that activities are *primarily* connected with religious worship or intended to propagate religious beliefs.

The cases on which SWZ relies are not on point. First, the court in *Hooters, Inc. v. City of Texarkana*, 897 F.Supp. 946 (E.D.Tex.1995) held that conducting religious activities inside a prison compound did not render the prison a "church." *See id.* at 951–53. Second, the building at issue in *Heard* was a parish priest's home that housed a day nursery or kindergarten. The court stated that the home was not a "church" because worship and religious training were not the day care's primary focus; these activities comprised only a small part of the curriculum. *See Heard*, 456 S.W.2d at 442, 444. Finally, *Coe v. City of Dallas*, 266 S.W.2d 181 (Tex.Civ.App.—El Paso 1953, no writ) does not mention the definition of "church" at issue, thereby preventing meaningful comparison to this case.

The Board's construction of "church" as including the hall is reasonable and does not contradict the plain language of the ordinance. Thus, the Board did not abuse its discretion by finding that the Premises were within 1000 feet of an existing church. We overrule point three.

## PHYSICAL BARRIERS AS MITIGATING FACTORS

 In its fourth point, SWZ contends the ordinance's 1000–foot spacing requirement is unconstitutional as applied in this case because the elevated freeway and railroad tracks located between the Premises and the Church are "substantial buffer zones" that would mitigate any negative secondary effects the sexually-oriented business might have on parishioners.

SWZ does not direct us to any evidence that these alleged buffers would serve as mitigating factors. Moreover, we have previously considered and rejected a similar argument directed at the 1000–foot spacing requirement. In *Schleuter v. City of Fort Worth*, 947 S.W.2d 920 (Tex.App.—Fort Worth 1997, writ denied) (en banc) we held that the requirement is sufficiently narrowly tailored to achieve the city's interest in "mitigating the secondary effects of sexually-oriented businesses." *Id.* at 927. Also, the United States Supreme Court has upheld the constitutionality of this type of spacing restriction. *See City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 43, 52, 106 S.Ct. 925, 926, 931, 89 L.Ed.2d 29 (1986).

Because the 1000–foot spacing requirement is constitutional as applied, we overrule point four. In light of our holdings with regard to points three and four, we need not consider SWZ's remaining points.

## CONCLUSION

Having disposed of all of SWZ's points, we affirm the district court's judgment.

---

1. SWZ asserts that the hall was also used for "television viewing [and] day care," but there is no evidence that the hall was used for day care. Further, Sister Lara testified that the hall once had a television set so children could watch religious videos but that the television had been removed.