## Ginivi Inc. v. Zoning Board of Adjustment of the City of Philadelphia

500

*Stephen G. Pollock* and *Carl K. Zucker,* for appellants.
*Cheryl L. Gaston,* for appellees.
*William Ewing,* for appellees (intervenors).

McINERNEY, *J.,* March 18, 2002—Appellants Ginivi Inc. and Scorpio Adult Boutique and Video appeal from this court's order affirming the denial of a variance.

## I. BACKGROUND

Scorpio Adult Boutique and Video is an adult book, video, paraphernalia, and peep show store located at 1320 Walnut Street (also known as 203 South Juniper Street) in Philadelphia. 203 South Juniper Street is a one-story building, divided into five stores. Finding of fact of the Zoning Board of Adjustment (FF) 6. The stores are numbered one through five, with store 1 being the northernmost, and the others proceeding sequentially to the south. See exhibit 12, existing floor plan of 1320 Walnut Street. Store 1 is a deli owned by an unknown person, not a party to this litigation. Stores 2, 3, 4 and 5 are owned by Ginivi. *Id.* Stores 4 and 5 have been used as a single adult book store since before the enactment of the Philadelphia Zoning Code's special controls on adult entertainment businesses. FF 7. The prior use included the sale and rental of adult videos, peep shows, and the sale of magazines and novelties. *Id.* Since the use antedated the enactment of the special controls, the nonconforming use was allowed to continue after their enactment. *Id.* Stores 2 and 3 were separate shops, divided from stores 4 and 5 by an internal wall with separate doors to the outside. See N.T., zoning board of adjustment, 3/22/01 at 12.

On an unknown date, the predecessor of Ginivi, John Davis, requested a variance to allow the store to expand from stores 4 and 5 into stores 2 and 3. FF 8. On July 24, 1991, the zoning board of adjustment refused the variance. FF 8.

Sometime in 1997, Ginivi breached the interior wall separating stores 4 and 5 from stores 2 and 3, and sealed

the exterior doors to stores 2 and 3. *Id.* Ginivi then illegally expanded into stores 2 and 3. *Id.* On June 28, 2000, the Philadelphia Department of Licenses and Inspections issued a violation notice advising Ginivi that he was in violation, and directing him to cease the expansion. FF 10. The violation notice further advised that reinspection would be made in 30 days, and failure to comply would result in the commencement of prosecution against Ginivi. *Id.*

On July 27, 2000, Ginivi applied to L&I for a use registration permit to legalize the expansion into stores 2 and 3. FF 1. L&I determined that the expansion would not comply with the use regulations and the special regulations applicable to adult entertainment establishments, and on October 20, 2000, refused the permit. FF 2. On October 27, 2000, Ginivi appealed to the ZBA. The appeal petition asserted that the permit should have been allowed for three reasons:

"(1) L&I improperly calculated the floor area at the time the use became nonconforming, and the new use did not exceed limits on expanding nonconforming uses;

"(2) L&I misapplied Philadelphia Code section 14-1607, relating to special controls for Center City; and, alternatively,

"(3) Ginivi requested a variance for the expansion, stating the extension was a natural expansion as of right, and that failure to grant the variance would create hardship, and would not adversely affect the public health, safety, and welfare." See petition of appeal to zoning board of adjustment, calendar number 00-1138, dated 10/27/00.

On March 22, 2001, the ZBA held a public hearing. At the hearing, East of Broad Improvement Association, Ruthanne Madway, and Roseanne Kozlow participated as protestants. On April 12, 2001, the ZBA denied the appeal. On May 9, 2001, Ginivi and Scorpio appealed the ZBA's decision to this court. East of Broad Improvement Association, Ruthanne Madway, and Roseanne Kozlow intervened in the appeal. After considering the parties' submissions, hearing oral argument, and reviewing the matter carefully, on January 24, 2002, this court denied the appeal. On February 4, 2002, Ginivi and Scorpio appealed to the Commonwealth Court. In response to an order of this court, Ginivi and Scorpio filed a concise statement of matters complained of on appeal, Pa.R.A.P. 1925(b), which alleges as follows, in pertinent part:

"The denial of a variance alone, without consideration of issues of nonconformance; [sic] vested property interest in the permit, and impact of the zoning code on appellants' First Amendment rights, was legal error. The zoning board itself had allowed the record to be augmented post-hearing, but refused to conduct a hearing on these material issues. The trial court abused its discretion by acting solely on the variance issue.

"Appellants were entitled by right to conduct adult uses within the building as a natural expansion of their nonconforming business. The zoning board erred by applying a 10 percent expansion limit to the business, since the zoning code (section 14-104(7)) applies only to extensions of gross floor area of structures. This application did not involve an extension of structure. The trial

court abused its discretion by applying the zoning board reasoning.

"The adult uses satisfied the legislative findings (section 14-1605) supporting the regulated use special controls. Protestants objected to the conduct of adult uses in their Center City area, but failed to establish any 'adverse secondary impact' as is required by decisional law to implicate First Amendment rights. The trial court abused its discretion and committed an error of law by misreliance upon such evidence to uphold the zoning board of adjustment finding of public harm.

"There was substantial evidence that the building could not be used for traditional commercial use, due to its location, limited street pattern, and discordant surrounding uses including a public garage facility and a cluttered service alley. The trial court erred by upholding the zoning board's determination to deny the variance; and to augment the record with missing documents and memoranda, but refusing to grant a hearing to address material issues raised thereon. The zoning board had an obligation to conduct a full and complete hearing, and the trial court erred in accepting the zoning board procedure, without remand."

These issues are meritless.

## II. DISCUSSION

### A. *Scorpio Waived Arguments By Failing To Properly Raise and Preserve Them*

Initially, we note that we do not know with certainty what Scorpio intended to say in the first paragraph quoted

above from its 1925(b) statement. Considering the paragraph as a whole, the most natural reading would be that this court erred by affirming the ZBA because the ZBA failed to consider the impact of the First Amendment, the prior nonconforming use, and the doctrine of vested rights when it rendered its decision, and this court erred by not considering those arguments itself. This interpretation is supported by the statements made by appellants' counsel at oral argument. See N.T. 10/31/01 at 5. However, the paragraph is confusing. If Scorpio reveals a different intended meaning to the Commonwealth Court, then it has waived whatever was intended. See *Commonwealth v. Dowling,* 778 A.2d 683, 686-87 (Pa. Super. 2001) ("[A] concise statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no concise statement at all."); see also, *Commonwealth v. Lord,* 533 Pa. 415, 719 A.2d 306 (1998) (holding that failure to file a 1925(b) statement where one is required waives all issues on appeal in part because requiring the courts to guess at the issues on appeal risks appellants losing rights). Courts cannot craft and refine arguments for parties.

Even if our interpretation is the correct one, appellants failed to properly raise and preserve these issues before the ZBA. During the hearing before the ZBA, appellants informed the board that they had not been permitted to see interdepartmental memos, notes, and other matters that were in the record. N.T. 10/31/01 at 18. Appellants also apparently asked the board to hold the record open for two weeks, or until April 5, 2001, to allow appellants to file a memorandum of law on con-

stitutional and other issues. See letter from Carl Oxholm III to the Honorable Thomas J. Kelly, chairman of zoning board of adjustment, dated 4/9/01; see also, letter from Carl K. Zucker to Honorable Thomas J. Kelly, chairman of zoning board of adjustment, dated 4/30/01. On April 5, 2001, protestants filed a memorandum of law discussing constitutional issues that protestants believed appellants might raise. See *id.* On April 6, 2001, appellants again complained of documents missing from the record. See letter from Carl K. Zucker to Honorable Thomas J. Kelly, chairman of zoning board of adjustment, dated 4/6/01 at 1. Appellants specifically complained that the deputy commissioner of L&I had authorized the removal of letters complaining to L&I, L&I's response to the complaints, and a legal opinion or memorandum of the city solicitor regarding issues before the ZBA. *Id.* On April 9, 2001, protestants advised the ZBA that appellants had never filed the memorandum of law, and urged the ZBA to render a decision based on the record as it then existed. See letter from Carl Oxholm III to the Honorable Thomas J. Kelly, chairman of ZBA, dated 4/9/01. On April 12, 2001, the ZBA refused the appeal, and appellants again objected to the documents' removal.

Appellants also asked the ZBA to rescind its decision and reopen the matter for reconsideration based on the "complete" record. See letter from Carl K. Zucker to Honorable Thomas J. Kelly, chairman of ZBA, dated 4/12/01. Noting that appellants had never asserted that the purportedly missing documents were relevant to a material issue, the protestants opposed appellants' request. See letter from Carl Oxholm III to the Honorable Thom-

as J. Kelly, chairman of ZBA dated 4/12/01. On April 13, 2001, appellants again requested rehearing or reconsideration of the appeal, citing the purportedly missing items, asserting a number of circumstances in support of the request. See letter from Carl K. Zucker to Honorable Thomas J. Kelly, chairman of ZBA dated 4/12/01. Among the circumstances was the assertion that "the concealed documents may implicate First Amendment issues, as well as jurisdictional, credibility, and standing questions." *Id.* at 1. Protestants once more opposed appellants' request. See letter from Carl Oxholm III to the Honorable Thomas J. Kelly, chairman of ZBA dated 4/17/01. On April 30, 2001, appellants asserted essentially that the ZBA had erred in denying the appeal, and renewed the demand for rehearing. Letter from Carl K. Zucker to Honorable Thomas J. Kelly, chairman of ZBA, dated 4/30/01. On May 2, 2001, the ZBA denied the request for rehearing or reconsideration, but allowed the record to be supplemented with any absent documents and the appellants' memorandum of law. See letter from Honorable Thomas J. Kelly, chairman of ZBA, to Carl K. Zucker dated 5/2/01.

We have carefully searched the record. Although we located a document labeled in the handwriting of an unknown person, "Document taken out of file by Dave Perri,"[1] we found absolutely no memorandum of law or brief from appellants. Where the court determines that the record before the ZBA is complete, issues not raised before the ZBA are waived before the trial court. Phila.

---

1. We do not know if the document is one of the "missing" documents.

Code 14-1807(5). We cannot say that the record is incomplete. The ZBA first allowed appellants two weeks in which to file a memorandum, and when appellants did not, the ZBA allowed them to supplement the record with the memo and "missing" documents at any time. Yet the memorandum was never supplied. Thus, any issues not raised during the public hearing itself before the ZBA have been waived. The record reveals that appellants argued only two issues during the open hearing before the ZBA: (1) The City of Philadelphia could not constitutionally restrict Scorpio's nonconforming use to a mere 10 percent expansion, see N.T. 10/31/01 at 9; and, (2) The use was nonconforming and the ZBA therefore erred in refusing the variance, see N.T. 10/31/01 at 10. Appellants are limited to these issues before the Commonwealth Court. All others have been waived. Pa.R.A.P. 302(a).

## B. *The ZBA Properly Applied the 10 Percent Restriction On Expansion of Nonconforming Uses*

Appellants assert that the ZBA improperly applied the 10 percent limit because that restriction only applies to extensions of gross floor area of structures. As the expansion here was within a single building, the argument continues, the gross floor area of the structure was not increased, and the limit does not apply.

The Philadelphia Code limits the expansion of a prior nonconforming use:

"*Extensions of structures containing nonconforming uses.* No structural extensions or additions to a structure containing a nonconforming use shall be made after July

15, 1957, which, when added to all structural extensions and additions made since the use first began to be nonconforming, shall cause the aggregate gross floor area of all such structural extensions and additions to exceed 10 percent of the gross floor area of the structure when the use first began to be nonconforming . . . ." Phila. Code §14-104(7).

Appellants' argument is flawed by appellants' misunderstanding of the definition of "structure." A "structure" does not necessarily have to be a separate building, for purposes of the Philadelphia Zoning Code:

"*Separate structures.* Where any building is subdivided into separate units, floors or portions of floors which are not interconnected and served by a common entranceway to other units, floors or portions of floors, each subdivision of the structure shall be considered a separate building, provided, that each separate building may have additional entranceways serving the ground floor or portions thereof . . . ." Phila. Code §14-102(82).

Under this definition, for purposes of the zoning code, unconnected subdivisions of a structure are deemed a freestanding structure. Reading that definition into the code portion imposing the 10 percent restriction, the zoning code plainly prohibits more than a 10 percent increase in the gross floor space of a nonconforming use, even within what would ordinarily be thought of as a single building. It is undisputed that the building in question contained five separate stores with separate entrance doors and that Ginivi had to knock down existing walls to expand. See N.T., zoning board of adjustment, 3/22/01 at 12.

The purpose of the 10 percent restriction demonstrates the correctness of this result. The point of the restriction is to allow businesses to grow reasonably, without defeating the zoning limitations resulting in the use being "nonconforming" in the first place. If a business could evade the restriction simply by expanding within the same building, the restriction would lose its force. We do not believe that city council intended such a result. Appellants' argument is meritless.

### C. *The ZBA Properly Disregarded Any Argument That the Property in Question Did Not Have Harmful Secondary Effects*

Appellants contend that the ZBA erred because the protestants failed to establish that Scorpio Adult Boutique and Video had an adverse secondary impact. This argument was waived as not raised before the ZBA. Even if it were not waived, the argument is devoid of merit, as appellants have confused First Amendment law.

Municipalities may validly regulate the location of adult entertainment establishments through content-neutral time, place, and manner restrictions. *City of Renton v. Playtime Theaters Inc.,* 475 U.S. 41, 47 (1986). These restrictions are content-neutral so long as they are not "enacted for the purpose of restraining speech on the basis of its content." *Renton,* 475 U.S. at 46-47. As no one here has suggested that the Philadelphia Zoning Code was aimed at the content of Scorpio and Ginivi's speech, we deem the regulation content-neutral. "Content-neutral time, place, and manner regulations are acceptable so long as they are designed to serve a substantial gov-

ernmental interest and do not unreasonably limit alternative avenues of communication." *Id.* at 47.

In *Renton,* the city examined studies conducted in Seattle showing that adult movie theaters cause adverse effects on the surrounding areas. *Id.* at 50. The City of Renton also relied on Seattle's experience. *Id.* On those bases, Renton enacted a zoning code prohibiting any adult motion picture theater from locating within 1,000 feet of any residential zone, single- or multiple-family dwelling, church, or park, and within one mile of any school. *Id.* at 44. The United States Supreme Court approved of the ordinance, holding it a valid content-neutral, time, place, and manner regulation. The court also held that the city could properly rely on studies and the experience of another city; the city did not have to establish the "particular problems or needs of Renton." *Id.*

Appellants at bar have attempted to convert proper grounds for a facial attack on the Philadelphia Zoning Code into an "as applied" challenge. Although we found no case directly on point, the Supreme Court's decision in *Renton* guides us. If *Renton* does not require the city to establish the particular effects of adult establishments in its own city to enact an ordinance aimed at secondary effects, we see no reason why Philadelphia (or protestants/intervenors, for that matter) should have had to prove secondary effects in order to apply validly the zoning code in a given case. The United States Supreme Court has already determined that a lesser evidentiary hurdle is sufficient. Moreover, a contrary ruling would fly in the face of the secondary effects doctrine. To require a showing of actual effects would mean that mu-

nicipalities could no longer enact a zoning code, which is inherently general in application, to combat the adverse side effects of these uses. *Renton* stands for the opposite proposition. The protestants and city were under no requirement to show Scorpio Adult Boutique and Video's adverse effects. See *SWZ Inc. v. Board of Adjustment of City of Ft. Worth,* 985 S.W.2d 268 (Tex. App. 1999) (holding that zoning ordinance aimed at secondary effects was constitutional as applied, notwithstanding alleged mitigation of secondary effects); see also, *ILQ Investments Inc. v. City of Rochester,* 25 F.3d 1413, 1418 (8th Cir. 1994) (holding that Rochester need not prove that business would likely have the exact same adverse effects as adult businesses in the studies Rochester considered).

## D. *The ZBA Properly Denied a Variance*

Appellants' 1925(b) statement asserts that the ZBA erred by not granting them a variance because there was substantial evidence that the building could not be used for traditional commercial use, and point to evidence of the need for a variance. Appellants further argue that the ZBA erred by not permitting a full hearing. Since the ZBA granted appellants a reasonable extension to augment the record with the "missing" documents and a memorandum, but appellants failed to file within the extended time limit, we reject the latter argument out of hand. If the hearing was not as full as appellants would have liked, they have no one to blame but themselves.

The precise argument appellants now present was not raised before the ZBA, and is therefore waived. Phila.

Code 14-1807(5). The argument before the ZBA was that the use was nonconforming and the ZBA therefore erred in refusing the variance. See N.T. 10/31/01 at 10.

Even if the argument had been preserved, it lacks merit. To start, appellants have incorrectly stated the standard of review of ZBA decisions. We affirm the ZBA so long as there is substantial evidence supporting its decision, it has not abused its discretion, and it has not committed an error of law. *Robisco Inc. v. Z.B.A., City of Philadelphia,* 35 Phila. 167 (1998). We do not reverse them simply because there is substantial evidence supporting a different decision.

The record supports the denial of the variance. To grant a variance, the ZBA must find that, due to special conditions, a literal enforcement of the Zoning Code would result in unnecessary hardship. See Phila. Code §14-1801(1)(c). The ZBA may only grant a variance where the variance will not be contrary to the public interest. *Id.* The Zoning Code contains a litany of factors that the ZBA must address in deciding whether a variance should be granted.

See Phila. Code §14-1802. As the party seeking a variance, appellants bore the burden of establishing unnecessary hardship. *8131 Roosevelt Corp. v. Zoning Board of Adjustment of the City of Philadelphia,* 2002 WL 257474, \*5 (Pa. Commw. 2002).

Had they raised the issue, appellants failed to carry their burden. There was no evidence that requiring that the property be used in conformity with current zoning would result in unnecessary hardship. To the contrary, the evidence suggested that stores 2 and 3 had since 1972

been used for a number of purposes, including a dry cleaning establishment, a travel agency, and a barber shop, see appellants' exhibit 5, protestants' exhibits 6E and 6F. Accordingly, the ZBA did not err by denying the variance.

## III. CONCLUSION

Appellants' arguments lack merit, and this court's order should be affirmed.

