COURT OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.  2-04-191-CV

 

 

FANTASY RANCH, INC. D/B/A FANTASY RANCH                     APPELLANT

 

                                                   V.

 

CITY OF ARLINGTON AND T&N, INC.                                      APPELLEES

 

                                              ------------

 

           FROM THE 342ND
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I.                   
Introduction

            This
is the case of the competing cabarets. 
The key question is which of two cabarets is the Aconforming use@
under the City of Arlington=s
anticlustering ordinance for sexually-oriented businesses.  We affirm the judgment of the trial court
declaring that Appellee T&N, Inc. is the conforming use under the
ordinance.








II.                
Background

            This
appeal calls for an interpretation of the Adult Entertainment chapter (AAEC@)
of the City of Arlington=s
municipal code.  Before turning to the
factual and procedural history of the case, we will examine the relevant
provisions of the AEC.

A.                
Arlington=s Adult Entertainment Chapter

            All
sexually-oriented businesses (ASOBs@) operating in Arlington must obtain a
license from the city.  Arlington, Tex., Ordinance 98-106, ' 4.01 (August 25, 1998).  Licenses must be renewed annually.  Id. '
4.05.

In 1992,
Arlington amended Article III of the AEC, captioned ALocation of Sexually Oriented Businesses,@ to preclude an SOB from operating within
1,000 feet of another SOB, as measured in a straight line:

A person commits an offense if he
establishes, operates or causes to be operated or expanded a Sexually Oriented
Business within 1,000 feet of any other Sexually Oriented Business.

. . . .

[T]he distance between any two (2) Sexually
Oriented Businesses shall be measured in a straight line . . . .

 

Arlington,
Tex., Ordinance 92-117 ' 3.01(C), (F) (November 17, 1992).  This prohibition is generally referred to as
the Aanticlustering ordinance.@ 
Violation of the anticlustering ordinance is grounds for Arlington to
deny an SOB license. Arlington, Tex.,
Ordinance 98-106, '
4.02(A)(1).








Section
3.02, captioned ANonconforming Sexually Oriented Business,@ governs the continued operation of
pre-existing SOBs that violate the anticlustering ordinance:

Any Sexually Oriented Business lawfully
operating prior to the effective date of [the anticlustering ordinance] that is
in violation of Section 3.01 shall be deemed a nonconforming Sexually Oriented
Business.  The nonconforming Sexually
Oriented Business will be permitted to continue for a period not to exceed
three (3) years from the effective date of [the anticlustering ordinance]. . .
. If two (2) or more Sexually Oriented Businesses are in 1,000 feet of  one another and otherwise within a
permissible location, the Sexually Oriented Business which was first
established and continually operating in a particular location is the
conforming Sexually Oriented Business, and the later-established business(es)
is nonconforming.

 

Id. ' 3.02(A). 
After the expiration of the three-year grace period, a nonconforming SOB
whose license application is denied may appeal to the License and Amortization Appeal
Board for a Agood neighbor@ hearing.  Id. ' 4.11  The Board
may exempt an SOB from the anticlustering ordinance if it makes several
findings, such as a finding that the SOB does not have a detrimental effect on
nearby properties.  Id. ' 4.11(E).

The
AEC prohibits the transfer of an SOB license:

A person commits an offense if the
person transfers a license to another person . . . .  A transfer of a license is deemed to have occurred if there is a
transfer of more than fifty percent (50%) of the ownership or control of a
Sexually Oriented Business.

 








Id. ' 4.10(A).  In 1999,
Arlington amended the AEC to provided that Athe Chief of Police may
revoke [an SOB] license: . . . If a license is transferred in violation of
Section 4.10(A).@ Arlington,
Tex., Ordinance 99-157, ' 4.06(A)(10) (December 14, 1999)
(emphasis added).  Before 1999, the AEC
simply imposed a fine not to exceed $2,000 per day for transfer of an SOB
license.  See  Arlington,
Tex., Ordinance 92-117, ' 6.01.  Arlington further amended the AEC in 2003 to define ATransfer of Ownership or Control@ of an SOB as follows:

1.     the sale,
lease, or sublease of the business;

 

2.     the
transfer of securities which constitute a controlling interest in the business,
whether by sale, exchange, or similar means; or

 

3.     the
establishment of a trust, gift, or other similar legal device which transfers
the ownership or control of the business, except for transfer by bequest . . .
.

 

Arlington, Tex., Ordinance 03-041, ' 2.01 (April 1, 2003).

With
these provisions of the AEC as a backdrop, we turn now to the factual and
procedural history giving rise to this appeal.

B.                
Factual and Procedural History

                        i)          T&N
and Fantasy Ranch Before 1995








            T&N began to operate a cabaret
called ALace@ in Arlington in 1986.  Kelli Freeman d/b/a Fantasy Ranch opened a
cabaret in 1991.  The premises of Lace
and Fantasy Ranch were located less than 1,000 feet from one another.  Both businesses were SOBs as defined by the
AEC.

When
the anticlustering ordinance took effect in 1992, Fantasy Ranch was deemed a
nonconforming use because it was established after T&N=s Lace cabaret. 
Accordingly, Fantasy Ranch applied for and received license renewals
under section 3.02(A)=s three-year grace period in 1993,
1994, and 1995.  Thereafter, Fantasy
Ranch requested an extension of the three-year period; Arlington denied the
extension request in 1997. 

1.                 
T&N=s Bankruptcy

            T&N
filed for bankruptcy in 1995.  From
T&N=s incorporation in 1986 until it filed for
bankruptcy, Judi Freeman and Roger Freeman were its sole shareholders,
officers, and directors.[1]  Judi and Roger also owned the land,
building, and fixtures of the premises where T&N operated Lace.  Roger was responsible for Lace=s day-to-day operations. 








As part of
T&N=s bankruptcy reorganization in 1996, Judi and
Roger transferred fifty percent of T&N=s
stock, as well as Lace=s land, building, and fixtures, to Arlington
Entertainment, L.L.C.[2]  Judi and Roger each retained twenty-five
percent of T&N=s stock. 
Judi and Roger entered into consulting agreements with T&N.  The consulting agreements provided, among
other things, that Arlington Entertainment was entitled to cast a tie-breaking
vote in the event that T&N=s
shareholders were deadlocked over any issue. 
Sometime after it emerged from bankruptcy, T&N changed the name of
its cabaret from ALace@
to AThe Fare@
but continued to operate a cabaret at the same premises through the time of
trial.  

2.                 
Fantasy Ranch, Inc.

            Kelli
and Harry Freeman incorporated Fantasy Ranch, Inc. (AFRI@)
in 1995. FRI first applied for and received an SOB license to operate Fantasy
Ranch under the AEC=s Agood
neighbor@ exemption in 1997, and applied for a
good-neighbor renewal annually through 2001. 
Harry testified that FRI spends $30,000 to $50,000 in expert witness and
attorney=s fees every year in connection with the good
neighbor licensing process. 

3.                 
The Lawsuit








            In
2002, FRI challenged Arlington=s
classification of The Fare as a conforming use and Fantasy Ranch as a
nonconforming use.  FRI contended that
Judi and Roger=s transfer of fifty percent of T&N=s stock to Arlington Entertainment, coupled
with Arlington Entertainment=s
tie-breaking vote power under Judi=s
and Roger=s consulting agreements, constituted an
illegal transfer of T&N=s
SOB license under section 4.10(A) of the AEC.

In
response, Arlington brought a declaratory judgment against FRI and T&N,
asking the trial court to declare whether The Fare or Fantasy Ranch was the
conforming use under the AEC.  The trial
court realigned the parties so that FRI was the plaintiff and Arlington and
T&N were defendants.  After a bench
trial, the trial court declared that T&N=s
cabaret was the conforming use under the AEC. 
FRI and T&N both requested findings of fact and conclusions of law,
but the trial court did not make any.

The day
after the trial court rendered its judgment, Arlington amended the
anticlustering ordinance to read as follows:

If two (2) or more Sexually Oriented
Businesses are within 1,000 feet of one another and otherwise in a permissible
location, the Sexually Oriented Business that was first established and has
continuously operated and maintained a valid and effective Sexually Oriented
Business license at a particular location is the conforming Sexually
Oriented Business. 

 








Arlington, Tex., Ordinance 04-032, ' 3.02 (March 23, 2004) (emphasis
added).  FRI filed a motion asking the
trial court to modify the judgment or grant a new trial, arguing that the
amendment to the anticlustering ordinance justified either a judgment in FRI=s favor or a new trial. 
The trial court overruled the motion. 

III.              
Discussion

            a)         FRI=s Standing

            Before
we turn to FRI=s issues, we must address T&N=s argument that FRI lacks standing to
challenge T&N=s status as a conforming use because FRI was
not incorporated until long after T&N was declared to be a conforming use
under the anticlustering ordinance and even after T&N=s bankruptcy reorganization. 

Standing
is implicit in the concept of subject matter jurisdiction.  Tex. Ass=n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 443 (Tex. 1993). Subject
matter jurisdiction is essential to the authority of a court to decide a
case.  Id.  In analyzing issues of standing, we focus on
whether a party has a sufficient relationship with the lawsuit so as to have a Ajusticiable interest@ in the outcome.  Austin Nursing Ctr., Inc. v. Lovato, 171
S.W.3d 845, 848 (Tex. 2005).  When a
plaintiff is personally aggrieved, it has standing.  Id.  The standing
doctrine requires that there be a Areal
controversy between the parties@
which Awill be actually determined by the judicial
declaration sought.@ Id. at 849 (quoting Nootsie, Ltd.
v. Williamson County Appraisal Dist., 925 S.W.2d 659, 662 (Tex. 1996)).








In this
case, the controversy among the parties is which of the two SOBs is the
conforming use under the AEC. 
Conforming-use status determines which SOB is automatically entitled to
an SOB license and which must undergo the costly good-neighbor hearing
process.  Because the SOB licenses must
be renewed annually, and because conforming-use status depends in part on an
SOB=s continuous operation from year to year,
both SOBs have a real interest in the question of which is the conforming use
when their licenses come up for annual renewal.  The fact that FRI was incorporated after T&N=s bankruptcy reorganization does not preclude
FRI=s interest in the question of whether that
reorganization ended T&N=s
status as the first-established and continuously-operated SOB.  We therefore reject T&N=s challenge to FRI=s standing.

A.                
FRI=s Issues

                        i)          Which
SOB is the conforming use under the version of the AEC in effect at the time of
judgment?










In its
first issue, FRI contends generally that the trial court erred by Adenying [FRI] its requested declaratory
relief@ and argues that the evidence conclusively
proves that Fantasy Ranch is the conforming use under the AEC and that the
trial court=s declaration that T&N is the conforming
use is contrary to the great weight and preponderance of the evidence.  In its second and third issues, FRI argues
that the trial court erred by denying its motion for new trial because the
trial court disregarded the law and the great weight and preponderance of the
evidence when it declared that T&N was the conforming use.  These three issues are closely related, and
FRI argues them together.  We will,
therefore, analyze them together.

a.                  
Standards of review

            In
a trial to the court where no findings of fact or conclusions of law are filed,
the trial court=s judgment implies all findings of fact
necessary to support it.  Pharo v.
Chambers County, 922 S.W.2d 945, 948 (Tex. 1996).  Where a reporter=s
record is filed, however, these implied findings are not conclusive, and an
appellant may challenge them by raising both legal and factual sufficiency of
the evidence  issues.  Roberson v. Robinson, 768 S.W.2d 280,
281 (Tex. 1989).








A
legal sufficiency challenge may only be sustained when:  (1) the record discloses a complete absence
of evidence of a vital fact; (2) the court is barred by rules of law or of
evidence from giving weight to the only evidence offered to prove a vital fact;
(3) the evidence offered to prove a vital fact is no more than a mere
scintilla; or (4) the evidence establishes conclusively the opposite of a vital
fact.  Uniroyal Goodrich Tire Co. v.
Martinez, 977 S.W.2d 328, 334 (Tex. 1998), cert. denied, 526 U.S.
1040 (1999); Robert
W. Calvert, ANo Evidence@ and AInsufficient Evidence@ Points of Error, 38 TEX. L. REV. 361, 362-63 (1960).  In
determining whether there is legally sufficient evidence to support the finding
under review, we must consider evidence favorable to the finding if a
reasonable factfinder could, and disregard evidence contrary to the finding
unless a reasonable factfinder could not. 
City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005). 

In
reviewing an issue asserting that a finding is Aagainst the great weight and
preponderance@ of the evidence, we must consider
and weigh all of the evidence and set aside the finding only if the evidence is
so weak or the finding is so contrary to the great weight and preponderance of
the evidence as to be clearly wrong and unjust.  Dow Chem. Co. v. Francis, 46 S.W.3d 237, 242 (Tex. 2001); In
re King=s Estate, 150 Tex. 662, 244 S.W.2d 660, 661
(1951).

We
review a trial court=s ruling on a motion for new trial
under the abuse of discretion standard. 
Director v. Evans, 889 S.W.2d 266, 268 (Tex. 1994); Smith v. Holmes, 53 S.W.3d
815, 817 (Tex. App.CAustin 2001, no pet.).  When reviewing the trial court=s denial of a new trial, every reasonable presumption will
be made in favor of the court=s ruling.  Ferguson v. Globe-Texas Co., 35
S.W.3d 688, 690 (Tex. App.CAmarillo 2000, pet. denied).

b.                 
Construction of municipal ordinances








        The
same rules apply to the construction of municipal ordinances that apply to the
construction of statutes.  Mills v.
Brown, 159 Tex. 110, 316 S.W.2d 720, 723 (1958); Seawall E. Townhomes
Ass=n v. City of Galveston, 879 S.W.2d 363, 364 (Tex. App.CHouston [14th Dist.] 1994, no writ).  The proper construction of an ordinance is a
question of law.  Johnson v. City of
Fort Worth, 774 S.W.2d 653, 656 (Tex. 1989).  When the words in an ordinance are clear, they must be given
their literal interpretation.  Seawall E. Townhomes, 879 S.W.2d at 364.  When an ordinance does not define a term,
the court should apply its ordinary meaning.  Monsanto Co. v. Cornerstones Mun. Util. Dist., 865 S.W.2d
937, 939 (Tex. 1993).  The courts should
also give serious consideration to the A[c]ontemporaneous construction of
an ordinance by the agency charged with its enforcement . . . so long as the
construction is reasonable and does not contradict the plain language of the
ordinance.@ 
SWZ, Inc. v. Bd. of Adjustment, 985 S.W.2d 268, 270 (Tex. App.CFort Worth 1999, pet. denied); see also Sorokolit
v. Rhodes, 889 S.W.2d 239, 241 (Tex. 1994); Seawall E. Townhomes,
879 S.W.2d at 364.

c.                  
Analysis








        The
first step in our analysis is to review the trial court=s application of section 3.02(A) to determine which SOB is
the conforming use under the AEC.  This
requires a simple application of the ordinance to the evidence.  The evidence shows that T&N established
the cabaret now known as The Fare in 1986 and has continuously operated it
since then.  The evidence also shows that
Fantasy Ranch was established in 1991 and has been continuously operated since
then, first by Kelli Freeman as a sole proprietorship and later by FRI.  Section 3.02(A), as it existed at the time
of trial, declared that Athe Sexually Oriented Business
which was first established and continually operating at a particular location
is the conforming Sexually Oriented Business, and the later-established
business is nonconforming.@ 
T&N first established and continually operated its cabaret at the
same location.  Thus, according to the
plain language of section 3.02(A), T&N=s cabaret is the conforming use
and Fantasy Ranch is the nonconforming use.

FRI
argues that our analysis cannot stop with a simple application of section
3.02(A).  It contends that we must
consider the AEC=s prohibition on license transfers
to determine whether T&N continuously operated its cabaret.  FRI=s argument comprises two logical
steps: first, that T&N=s bankruptcy reorganization
resulted in a de facto transfer of its license; and second, if there was a
transfer, that the prohibited transfer broke the chain of continuity between
the cabaret=s establishment in 1986 and the
time of trial.  We will consider each of
these steps in turn.








First,
we agree that T&N=s bankruptcy reorganization did
result in a Atransfer@ of its SOB license. 
Section 4.10(A) prohibits the transfer of an SOB  license to another person and provides that Aa transfer of a license is deemed to have occurred if
there is a transfer of more than fifty percent (50%) of the ownership or
control of a Sexually Oriented Business.@ 
Judi and Roger transferred only fifty percent of T&N=s stock to Arlington Entertainment, so there was not an
outright transfer of more than fifty percent of T&N=s ownership.  But
FRI points to Arlington Entertainment=s tie-breaking vote and argues
that Judi and Roger transferred more than fifty percent of the control
over T&N to Arlington Entertainment. 
The tie-breaking vote is the salient and undisputed fact.  Before ceding that vote to Arlington
Entertainment, Judi and Roger had ultimate control over T&N; now, Arlington
Entertainment has ultimate control because it can override the combined vote of
Judi=s and Roger=s stock in the company. 
That shift in control resulted in a transfer of T&N=s SOB license under section 4.10(A).








But
FRI=s argument stumbles on the second
step.  Under the AEC, even if T&N=s bankruptcy reorganization resulted in a prohibited
transfer of its SOB license, that transfer did not break the chain of T&N=s continuous operation from 1986 to the present.  In 1996, the only consequence arising from a
prohibited license transfer was a fine not to exceed $2,000 per day under ' 7.01.  It was
not until 1999 that Arlington amended the AEC to provide that the chief of
police may revoke an SOB license transferred in violation of section
4.10(A).  See Arlington, Tex., Ordinance 99-157, ' 4.06(A)(10).  Even
if the 1999 amendment applied to this case, its use of the word Amay@ makes revocation discretionary,
and there is no evidence in the record that the chief of police revoked T&N=s license between 1999 and the time of trial.

FRI
further argues that Arlington=s own interpretation of the
anticlustering ordinance deemed Fantasy Ranch the conforming use and urges this
court to defer to Arlington=s interpretation.  In support of this argument, FRI points to
the following colloquy during trial between the trial court and Arlington=s attorney:  

[ARLINGTON=S ATTORNEY]:  If
someone comes in and wants to B a new owner wants to come in and
own more than 50 percent of the corporation that has a license, that is a
transfer of a license, which is forbidden, so that person would have to come in
as a new applicant.

 

THE
COURT:  And that=s firmly the City=s position?

 

[ARLINGTON=S ATTORNEY]:  Yes.

 








The flaw in
FRI=s argument is that Arlington=s attorney=s comment on the record is at odds
with the plain meaning of the version of the AEC in effect at the time of
trial.  As we have already concluded,
nothing in the relevant version of the AEC revoked an existing license or broke
the chain of continuity between an existing license holder and its transferee,
even when a license was transferred in violation of the AEC.  Because the interpretation of Arlington=s attorney is contrary to the plain meaning of the AEC, we
are not bound to give that interpretation serious consideration, much less
effect.  See SWZ, Inc., 985
S.W.2d at 270.

Also
in support of its argument that we should defer to Arlington=s interpretation of the ordinance, FRI contends that the
purpose of the 2004 amendment to section 3.02(A)Cwhich added the words, Amaintained a valid and effective [SOB] license@ to the definition of Aconforming use@Cwas to Aclarify that [FRI], and not T&N, was the rightful
conforming use.@ 

We
reject FRI=s argument.  The prefatory language of the 2004 amendment
does not support FRI=s conclusion.  According to the ordinance, the purpose of
the amendment was to deter an SOB whose license was denied from immediately
submitting another license application for the same business at the same
location and continuing to operate under a provisional license while the new
application was subjected to administrative review.  Arlington, Tex., Ordinance
04-032, ' 3.02. 

We
hold that the trial court=s judgment and implied fact
finding that T&N was the conforming use was supported by legally sufficient
evidence and was not contrary to the great weight and preponderance of the
evidence.  We likewise hold that the
trial court did not abuse its discretion in denying FRI=s motion for new trial on these bases.  We therefore overrule FRI=s first, second, and third issues.








2.                 
ANewly discovered@ evidence

            In
its fourth issue, FRI argues that the trial court erred by denying its motion
for new trial because it disregarded evidence discovered after the rendition of
judgment.  The Anew evidence@
upon which FRI relies is the 2004 amendment to the AEC.

A party
moving for a new trial on the basis of newly discovered evidence has the burden
of establishing the following elements:

1.         Admissible, competent
evidence must be introduced on the hearing of the motion for new trial showing
the existence of the newly discovered evidence relied upon[;] 

 

2.         The moving party must
show he or she had no notice of the existence of such evidence prior to the
time of trial[;]

 

3.         The moving party must
show that due diligence had been used to procure the evidence prior to trial[;]

 

4.         The moving party must
show that the evidence is not merely cumulative to that already given and does
not tend only to impeach the testimony of the adversary[; and]

 

5.         The moving party must
show that the evidence would probably produce a different result if a new trial
were granted.

 








Dankowski v. Dankowski, 922 S.W.2d 298, 305 (Tex. App.CFort Worth 1996, writ denied).  Whether to grant a new trial based on newly
discovered evidence is within the sound discretion of the trial court.  Jackson v. Van Winkle, 660 S.W.2d
807, 809 (Tex. 1983).  The trial court=s ruling on such a motion will not be
disturbed on appeal unless an abuse of discretion occurred.  Id.

Assuming
without deciding that an amendment to a municipal ordinance can be considered Aevidence,@
FRI arguably carried its burden on the first four elements of the new-evidence
test.  But FRI cannot meet the fifth
element of the test because it cannot show that the amended ordinance would
probably produce a different result on retrial.  Nothing in the AEC renders a license invalid or ineffective
simply because it was transferred in violation of section 4.10(A).  As we have already noted, the penalty for a
prohibited license transfer before the 2003 amendment to the AEC was a
fine.  The 2003 amendment to the AEC
provides that a transferred license may be revoked, but there is no
evidence that Arlington has revoked T&N=s
license.  Therefore, even under the 2004
amendment to section 3.10(A), T&N is the conforming use because it was the
first established of the two SOBs, was continuously operated, and maintained a
valid and effective license.

We
conclude that the trial court did not abuse its discretion by denying a new
trial on the basis of FRI=s
newly discovered Aevidence.@  We overrule FRI=s fourth issue.








In light
of our disposition of FRI=s
issues, we need not address T&N=s
arguments that FRI=s declaratory judgment action is barred by
res judicata and that FRI=s
incorporation broke the continuity of Fantasy Ranch=s own SOB license.  See Tex. R. App. P.
47.1.

B.                
Arlington=s Issue

            In
a single issue, Arlington urges this court to declare that there can be but one
conforming-use SOB under the anticlustering ordinance.  Arlington made the same request of the trial
court, but the trial court did not make such a declaration. 

A
declaratory judgment is appropriate only if a justiciable controversy exists as
to the rights and status of the parties and the controversy will be resolved by
the declaration sought.  Bonham State
Bank v. Beadle, 907 S.W.2d 465, 467 (Tex. 1995).  To constitute a justiciable controversy, there must exist a real
and substantial controversy involving genuine conflict of tangible interests
and not merely a theoretical dispute.  Id.

As Arlington
concedes, FRI does not contend that there can be more than one conforming-use
SOB under the anticlustering ordinance. 
Nor does T&N so contend. 
Implicit in the arguments of both FRI and T&N is the recognition
that only one of them can be a conforming use. 
Thus, there is no justiciable controversy among the parties as to
whether there can be more than one conforming use under the anticlustering
ordinance.  We therefore overrule
Arlington=s sole issue.








IV.             
Conclusion

            Having
overruled FRI=s four issues and Arlington=s sole issue, we affirm the judgment of the
trial court.  See Tex. R. App. P. 43.2(a).

 

 

ANNE GARDNER

JUSTICE

 

PANEL A:   CAYCE,
C.J.; GARDNER and WALKER, JJ.

 

DELIVERED:  March 23, 2006











[1]Judi and Roger Freeman are
unrelated to Kelli Freeman and her husband, Harry.  To avoid confusion, we will refer to the various Freemans by
their first names.





[2]The principal of Arlington
Entertainment is Dean Maddox.