FANTASY RANCH V. CITY OF ARLINGTON, ET AL.

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-04-191-CV

FANTASY RANCH, INC. D/B/A FANTASY RANCH APPELLANT

V.

CITY OF ARLINGTON AND T&N, INC. APPELLEES

------------

FROM THE 342ND DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------

Introduction

This is the case of the competing cabarets.  The key question is which of two cabarets is the “conforming use” under the City of Arlington’s anticlustering ordinance for sexually-oriented businesses.  We affirm the judgment of the trial court declaring that Appellee T&N, Inc. is the conforming use under the ordinance.

Background

This appeal calls for an interpretation of the Adult Entertainment chapter (“AEC”) of the City of Arlington’s municipal code.  Before turning to the factual and procedural history of the case, we will examine the relevant provisions of the AEC.

Arlington’s Adult Entertainment Chapter

All sexually-oriented businesses (“SOBs”) operating in Arlington must obtain a license from the city.  
Arlington, Tex., Ordinance 
98-106, § 4.01 (August 25, 1998).  Licenses must be renewed annually.  
Id. 
§ 4.05.

In 1992, Arlington amended Article III of the AEC, captioned “Location of Sexually Oriented Businesses,” to preclude an SOB from operating within 1,000 feet of another SOB, as measured in a straight line:

A person commits an offense if he establishes, operates or causes to be operated or expanded a Sexually Oriented Business within 1,000 feet of any other Sexually Oriented Business.

. . . .

[T]he distance between any two (2) Sexually Oriented Businesses shall be measured in a straight line . . . .

Arlington, Tex., Ordinance 
92-117
 
§ 3.01(C), (F) (November 17, 1992).  This prohibition is generally referred to as the “anticlustering ordinance.”  Violation of the anticlustering ordinance is grounds for Arlington to deny an SOB license. 
Arlington, Tex., Ordinance 
98-106, § 4.0
2(A)(1).

Section 3.02, captioned “Nonconforming Sexually Oriented Business,” governs the continued operation of pre-existing SOBs that violate the anticlustering ordinance:

Any Sexually Oriented Business lawfully operating prior to the effective date of [the anticlustering ordinance] that is in violation of Section 3.01 shall be deemed a nonconforming Sexually Oriented Business.  The nonconforming Sexually Oriented Business will be permitted to continue for a period not to exceed three (3) years from the effective date of [the anticlustering ordinance]. . . . If two (2) or more Sexually Oriented Businesses are in 1,000 feet of  one another and otherwise within a permissible location, the Sexually Oriented Business which was first established and continually operating in a particular location is the conforming Sexually Oriented Business, and the later-established business(es) is nonconforming.

Id. 
§ 3.02(A).  After the expiration of the three-year grace period, a nonconforming SOB whose license application is denied may appeal to the 
License and Amortization Appeal Board for a “good neighbor” hearing.  
Id. 
§ 4.11  The Board may exempt an SOB from the anticlustering ordinance if it makes several findings, such as a finding that the SOB does not have a detrimental effect on nearby properties.  
Id. 
§ 4.11(E)
.

The AEC prohibits the transfer of an SOB license:

A person commits an offense if the person transfers a license to another person . . . .  A transfer of a license is deemed to have occurred if there is a transfer of more than fifty percent (50%) of the ownership or control of a Sexually Oriented Business.

Id. 
§ 4.10(A).  In 1999, Arlington amended the AEC to provided that “the Chief of Police 
may
 revoke [an SOB] license: . . . If a license is transferred in violation of Section 4.10(A).” 
Arlington, Tex., Ordinance
 99-157, § 4.06(A)(10) (December 14, 1999) (emphasis added).  Before 1999, the AEC simply imposed a fine not to exceed $2,000 per day for transfer of an SOB license.  
See
  
Arlington, Tex., Ordinance 
92-117, § 6.01.  Arlington further amended the AEC in 2003 to define “Transfer of Ownership or Control” of an SOB as follows:

1. the sale, lease, or sublease of the business;

2. the transfer of securities which constitute a controlling interest in the business, whether by sale, exchange, or similar means; or

3. the establishment of a trust, gift, or other similar legal device which transfers the ownership or control of the business, except for transfer by bequest . . . .

Arlington, Tex., Ordinance 
03-041, § 2.01 (April 1, 2003).

With these provisions of the AEC as a backdrop, we turn now to the factual and procedural history giving rise to this appeal.

Factual and Procedural History

T&N and Fantasy Ranch Before 1995

T&N began to operate a cabaret called “Lace” in Arlington in 1986.  Kelli Freeman d/b/a Fantasy Ranch opened a cabaret in 1991.  The premises of Lace and Fantasy Ranch were located less than 1,000 feet from one another.  Both businesses were SOBs as defined by the AEC.

When the anticlustering ordinance took effect in 1992, Fantasy Ranch was deemed a nonconforming use because it was established after T&N’s Lace cabaret.  Accordingly, Fantasy Ranch applied for and received license renewals under section 3.02(A)’s three-year grace period in 1993, 1994, and 1995.  Thereafter, Fantasy Ranch requested an extension of the three-year period; Arlington denied the extension request in 1997. 

T&N’s Bankruptcy

T&N filed for bankruptcy in 1995.  From T&N’s incorporation in 1986 until it filed for bankruptcy, Judi Freeman and Roger Freeman were its sole shareholders, officers, and directors.
(footnote: 1)  Judi and Roger also owned the land, building, and fixtures of the premises where T&N operated Lace.  Roger was responsible for Lace’s day-to-day operations. 

As part of T&N’s bankruptcy reorganization in 1996, Judi and Roger transferred fifty percent of T&N’s stock, as well as Lace’s land, building, and fixtures, to Arlington Entertainment, L.L.C.
(footnote: 2)  Judi and Roger each retained twenty-five percent of T&N’s stock.  Judi and Roger entered into consulting agreements with T&N.  The consulting agreements provided, among other things, that Arlington Entertainment was entitled to cast a tie-breaking vote in the event that T&N’s shareholders were deadlocked over any issue.  Sometime after it emerged from bankruptcy, T&N changed the name of its cabaret from “Lace” to “The Fare” but continued to operate a cabaret at the same premises through the time of trial.  

Fantasy Ranch, Inc.

Kelli and Harry Freeman incorporated Fantasy Ranch, Inc. (“FRI”) in 1995. FRI first applied for and received an SOB license to operate Fantasy Ranch under the AEC’s “good neighbor” exemption in 1997, and applied for a good-neighbor renewal annually through 2001.  Harry testified that FRI spends $30,000 to $50,000 in expert witness and attorney’s fees every year in connection with the good neighbor licensing process. 

The Lawsuit

In 2002, FRI challenged Arlington’s classification of The Fare as a conforming use and Fantasy Ranch as a nonconforming use.  FRI contended that Judi and Roger’s transfer of fifty percent of T&N’s stock to Arlington Entertainment, coupled with Arlington Entertainment’s tie-breaking vote power under Judi’s and Roger’s consulting agreements, constituted an illegal transfer of T&N’s SOB license under section 4.10(A) of the AEC.

In response, Arlington brought a declaratory judgment against FRI and T&N, asking the trial court to declare whether The Fare or Fantasy Ranch was the conforming use under the AEC.  The trial court realigned the parties so that FRI was the plaintiff and Arlington and T&N were defendants.  After a bench trial, the trial court declared that T&N’s cabaret was the conforming use under the AEC.  FRI and T&N both requested findings of fact and conclusions of law, but the trial court did not make any.

The day after the trial court rendered its judgment, Arlington amended the anticlustering ordinance to read as follows:

If two (2) or more Sexually Oriented Businesses are within 1,000 feet of one another and otherwise in a permissible location, the Sexually Oriented Business that was first established and has continuously operated 
and maintained a valid and effective Sexually Oriented Business license
 at a particular location is the conforming Sexually Oriented Business. 

Arlington, Tex., Ordinance 
04-032, § 3.02 (March 23, 2004) (emphasis added)
.  FRI filed a motion asking the trial court to modify the judgment or grant a new trial, arguing that the amendment to the anticlustering ordinance justified either a judgment in FRI’s favor or a new trial.  The trial court overruled the motion. 

Discussion

FRI’s Standing

Before we turn to FRI’s issues, we must address T&N’s argument that FRI lacks standing to challenge T&N’s status as a conforming use because FRI was not incorporated until long after T&N was declared to be a conforming use under the anticlustering ordinance and even after T&N’s bankruptcy reorganization. 

Standing is implicit in the concept of subject matter jurisdiction.  
Tex. Ass’n of Bus. v. Tex. Air Control Bd.
, 852 S.W.2d 440, 443 (Tex. 1993). Subject matter jurisdiction is essential to the authority of a court to decide a case.  
Id.
  In analyzing issues of standing, we focus on whether a party has a sufficient relationship with the lawsuit so as to have a “justiciable interest” in the outcome. 
 Austin Nursing Ctr., Inc. v. Lovato
, 171 S.W.3d 845, 848 (Tex. 2005).  When a plaintiff is personally aggrieved, it has standing.  
Id. 
 The standing doctrine requires that there be a “real controversy between the parties” which “will be actually determined by the judicial declaration sought.” 
Id.
 at 849 (quoting 
Nootsie, Ltd. v. Williamson County Appraisal Dist
., 925 S.W.2d 659, 662 (Tex. 1996)).

In this case, the controversy among the parties is which of the two SOBs is the conforming use under the AEC.  Conforming-use status determines which SOB is automatically entitled to an SOB license and which must undergo the costly good-neighbor hearing process.  Because the SOB licenses must be renewed annually, and because conforming-use status depends 
in part on an SOB’s continuous operation from year to year, both SOBs have a real interest in the question of which is the conforming use when their licenses come up for annual renewal.  The fact that FRI was incorporated after T&N’s bankruptcy reorganization does not preclude FRI’s interest in the question of whether that reorganization ended T&N’s status as the first-established and continuously-operated SOB.  We therefore reject T&N’s challenge to FRI’s standing.

FRI’s Issues

Which SOB is the conforming use under the version of the AEC in effect at the time of judgment?

In its first issue, FRI contends generally that the trial court erred by “denying [FRI] its requested declaratory relief” and argues that the evidence conclusively proves that Fantasy Ranch is the conforming use under the AEC and that the trial court’s declaration that T&N is the conforming use is contrary to the great weight and preponderance of the evidence.  In its second and third issues, FRI argues that the trial court erred by denying its motion for new trial because the trial court disregarded the law and the great weight and preponderance of the evidence when it declared that T&N was the conforming use.  These three issues are closely related, and FRI argues them together.  We will, therefore, analyze them together.

Standards of review

In a trial to the court where no findings of fact or conclusions of law are filed, the trial court’s judgment implies all findings of fact necessary to support it.  
Pharo v. Chambers County
, 922 S.W.2d 945, 948 (Tex. 1996).  Where a reporter’s record is filed, however, these implied findings are not conclusive, and an appellant may challenge them by raising both legal and factual sufficiency of the evidence  issues.  
Roberson v. Robinson
, 768 S.W.2d 280, 281 (Tex. 1989).

A legal sufficiency challenge may only be sustained when:  (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact.  
Uniroyal Goodrich Tire Co. v. Martinez
, 977 S.W.2d 328, 334 (Tex. 1998),
 cert. denied
, 526 U.S. 1040 (1999);
 Robert W. Calvert, 
“No Evidence”
 
and “Insufficient Evidence” Points of Error
, 38 T
EX
. L. R
EV
. 361, 362-63 (1960)
.  In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could, and disregard evidence contrary to the finding unless a reasonable factfinder could not.
  
City of Keller v. Wilson
, 
168 S.W.3d 802, 827
 (Tex. 2005). 

In reviewing an issue asserting that a finding is “against the great weight and preponderance” of the evidence, we must consider and weigh all of the evidence and set aside the finding only if the evidence is so weak or the finding is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust.  
Dow Chem. Co. v. Francis
, 46 S.W.3d 237, 242 (Tex. 2001); 
In re King’s Estate
, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

We review a trial court’s ruling on a motion for new trial under the abuse of discretion standard.  
Director v. Evans
, 889 S.W.2d 266, 268 (Tex. 1994);
 
Smith v. Holmes
, 53 S.W.3d 815, 817 (Tex. App.—Austin 2001, no pet.).  When reviewing the trial court’s denial of a new trial, every reasonable presumption will be made in favor of the court’s ruling.  
Ferguson v. Globe-Texas Co.
, 35 S.W.3d 688, 690 (Tex. App.—Amarillo 2000, pet. denied).

Construction of municipal ordinances

The same rules apply to the construction of municipal ordinances that apply to the construction of statutes.  
Mills v. Brown
, 159 Tex. 110, 316 S.W.2d 720, 723 (1958);
 Seawall E. Townhomes Ass’n v. City of Galveston
, 879 S.W.2d 363, 364 (Tex. App.—Houston [14th
 Dist.] 1994, no writ).  The proper construction of an ordinance is a question of law.
  Johnson v. City of Fort Worth
, 774 S.W.2d 653, 656 (Tex. 1989).  
When the words in an ordinance are clear, they must be given their literal interpretation. 
 Seawall E. Townhomes
, 879 S.W.2d at 364
.  When an ordinance does not define a term, the court should apply its ordinary meaning.
  Monsanto Co. v. Cornerstones Mun. Util. Dist.
, 865 S.W.2d 937, 939 (Tex. 1993).  The courts should also give serious consideration to the “[c]ontemporaneous construction of an ordinance by the agency charged with its enforcement . . . so long as the construction is reasonable and does not contradict the plain language of the ordinance.”  
SWZ, Inc. v. Bd. of Adjustment
, 985 S.W.2d 268, 270 (Tex. App.—Fort Worth 1999, pet. denied);
 see also
 
Sorokolit v. Rhodes
, 889 S.W.2d 239, 241 (Tex. 1994); 
Seawall E. Townhomes
, 879 S.W.2d at 364.

Analysis

The first step in our analysis is to review the trial court’s application of section 3.02(A) to determine which SOB is the conforming use under the AEC.  This requires a simple application of the ordinance to the evidence.  The evidence shows that T&N established the cabaret now known as The Fare in 1986 and has continuously operated it since then.  The evidence also shows that Fantasy Ranch was established in 1991 and has been continuously operated since then, first by Kelli Freeman as a sole proprietorship and later by FRI.  Section 3.02(A), as it existed at the time of trial, declared that 
“the Sexually Oriented Business which was first established and continually operating at a particular location is the conforming Sexually Oriented Business, and the later-established business is nonconforming.”  T&N first established and continually operated its cabaret at the same location
.  Thus, according to the plain language of section 3.02(A), T&N’s cabaret is the conforming use and Fantasy Ranch is the nonconforming use.

FRI argues that our analysis cannot stop with a simple application of section 3.02(A).  It contends that we must consider the AEC’s prohibition on license transfers to determine whether T&N continuously operated its cabaret.  FRI’s argument comprises two logical steps: first, that T&N’s bankruptcy reorganization resulted in a de facto transfer of its license; and second, if there was a transfer, that the prohibited transfer broke the chain of continuity between the cabaret’s establishment in 1986 and the time of trial.  We will consider each of these steps in turn.

First, we agree that T&N’s bankruptcy reorganization did result in a “transfer” of its SOB license.  Section 4.10(A) prohibits the transfer of an SOB  license 
to another person and provides that “a transfer of a license is deemed to have occurred if there is a transfer of more than fifty percent (50%) of the ownership or control of a Sexually Oriented Business.”  Judi and Roger transferred only fifty percent of T&N’s stock to Arlington Entertainment, so there was not an outright transfer of more than fifty percent of T&N’s ownership.  But FRI points to Arlington Entertainment’s tie-breaking vote 
and argues that Judi and Roger transferred more than fifty percent of the 
control
 over T&N to Arlington Entertainment.  The tie-breaking vote is the salient and undisputed fact.  Before ceding that vote to Arlington Entertainment, Judi and Roger had ultimate control over T&N; now, Arlington Entertainment has ultimate control because it can override the combined vote of Judi’s and Roger’s stock in the company.  That shift in control resulted in a transfer of T&N’s SOB license under section 4.10(A).

But FRI’s argument stumbles on the second step.  Under the AEC, even if T&N’s bankruptcy reorganization resulted in a prohibited transfer of its SOB license, that transfer did not break the chain of T&N’s continuous operation from 1986 to the present.  In 1996, the only consequence arising from a prohibited license transfer was a fine not to exceed $2,000 per day under § 7.01.  It was not until 1999 that Arlington amended the AEC to provide that the chief of police may revoke an SOB license transferred in violation of section 4.10(A).  
See 
Arlington, Tex., Ordinance
 99-157, § 4.06(A)(10)
.  Even if the 1999 amendment applied to this case, its use of the word “may” makes revocation discretionary, and there is no evidence in the record that the chief of police revoked T&N’s license between 1999 and the time of trial.

FRI further argues that Arlington’s own interpretation of the anticlustering ordinance deemed Fantasy Ranch the conforming use and urges this court to defer to Arlington’s interpretation.  In support of this argument, FRI points to the following colloquy during trial between the trial court and Arlington’s attorney:  

[ARLINGTON’S ATTORNEY]:  If someone comes in and wants to – a new owner wants to come in and own more than 50 percent of the corporation that has a license, that is a transfer of a license, which is forbidden, so that person would have to come in as a new applicant.

THE COURT:  And that’s firmly the City’s position?

[ARLINGTON’S ATTORNEY]:  Yes.

The flaw in FRI’s argument is that Arlington’s attorney’s comment on the record is at odds with the plain meaning of the version of the AEC in effect at the time of trial.  As we have already concluded, nothing in the relevant version of the AEC revoked an existing license or broke the chain of continuity between an existing license holder and its transferee, even when a license was transferred in violation of the AEC.  Because the interpretation of Arlington’s attorney is contrary to the plain meaning of the AEC, we are not bound to give that interpretation serious consideration, much less effect.  
See
 
SWZ, Inc., 
985 S.W.2d at 270.

Also in support of its argument that we should defer to Arlington’s interpretation of the ordinance, FRI contends that the purpose of the 2004 amendment to section 3.02(A)—which added the words, “maintained a valid and effective [SOB] license” to the definition of “conforming use”—was to “clarify that [FRI], and not T&N, was the rightful conforming use.” 

We reject FRI’s argument.  The prefatory language of the 2004 amendment does not support FRI’s conclusion.  According to the ordinance, the 
purpose of the amendment was to deter an SOB whose license was denied from immediately submitting another license application for the same business at the same location and continuing to operate under a provisional license while the new application was subjected to administrative review.  
Arlington, Tex., Ordinance 
04-032, § 3.02. 

We hold that the trial court’s judgment and implied fact finding that T&N was the conforming use was supported by legally sufficient evidence and was not contrary to the great weight and preponderance of the evidence.  We likewise hold that the trial court did not abuse its discretion in denying FRI’s motion for new trial on these bases.  We therefore overrule FRI’s first, second, and third issues.

“Newly discovered” evidence

In its fourth issue, FRI argues that the trial court erred by denying its motion for new trial because it disregarded evidence discovered after the rendition of judgment.  The “new evidence” upon which FRI relies is the 2004 amendment to the AEC.

A party moving for a new trial on the basis of newly discovered evidence has the burden of establishing the following elements:

1. Admissible, competent evidence must be introduced on the hearing of the motion for new trial showing the existence of the newly discovered evidence relied upon[;] 

2. The moving party must show he or she had no notice of the existence of such evidence prior to the time of trial[;]

3. The moving party must show that due diligence had been used to procure the evidence prior to trial[;]

4. The moving party must show that the evidence is not merely cumulative to that already given and does not tend only to impeach the testimony of the adversary[; and]

 

5. The moving party must show that the evidence would probably produce a different result if a new trial were granted.

Dankowski v. Dankowski
, 922 S.W.2d 298, 305 (Tex. App.—Fort Worth 1996, writ denied).  Whether to grant a new trial based on newly discovered evidence is within the sound discretion of the trial court.  
Jackson v. Van Winkle
, 660 S.W.2d 807, 809 (Tex. 1983).  The trial court’s ruling on such a motion will not be disturbed on appeal unless an abuse of discretion occurred.  
Id
.

Assuming without deciding that an amendment to a municipal ordinance can be considered “evidence,” FRI arguably carried its burden on the first four elements of the new-evidence test.  But FRI cannot meet the fifth element of the test because it cannot show that the amended ordinance would probably produce a different result on retrial.  Nothing in the AEC renders a license invalid or ineffective simply because it was transferred in violation of section 4.10(A).  As we have already noted, the penalty for a prohibited license transfer before the 2003 amendment to the AEC was a fine.  The 2003 amendment to the AEC provides that a transferred license 
may
 be revoked, but there is no evidence that Arlington has revoked T&N’s license.  Therefore, even under the 2004 amendment to section 3.10(A), T&N is the conforming use because it was the first established of the two SOBs, was continuously operated, and maintained a valid and effective license.

We conclude that the trial court did not abuse its discretion by denying a new trial on the basis of FRI’s newly discovered “evidence.”  We overrule FRI’s fourth issue.

In light of our disposition of FRI’s issues, we need not address T&N’s arguments that FRI’s declaratory judgment action is barred by res judicata and that FRI’s incorporation broke the continuity of Fantasy Ranch’s own SOB license.  
See 
Tex. R. App. P.
 47.1.

Arlington’s Issue

In a single issue, Arlington urges this court to declare that there can be but one conforming-use SOB under the anticlustering ordinance.  Arlington made the same request of the trial court, but the trial court did not make such a declaration. 

A declaratory judgment is appropriate only if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought. 
 Bonham State Bank v. Beadle, 
907 S.W.2d 465, 467 (Tex. 1995).  To constitute a justiciable controversy, there must exist a real and substantial controversy involving genuine conflict of tangible interests and not merely a theoretical dispute.  
Id.

As Arlington concedes, FRI does not contend that there can be more than one conforming-use SOB under the anticlustering ordinance.  Nor does T&N so contend.  Implicit in the arguments of both FRI and T&N is the recognition that only one of them can be a conforming use.  Thus, there is no justiciable controversy among the parties as to whether there can be more than one conforming use under the anticlustering ordinance.  We therefore overrule Arlington’s sole issue.

Conclusion

Having overruled FRI’s four issues and Arlington’s sole issue, we affirm the judgment of the trial court.  
See
 
Tex. R. App. P.
 43.2(a).

ANNE GARDNER

JUSTICE

PANEL A: CAYCE, C.J.; GARDNER and WALKER, JJ.

DELIVERED:  March 23, 2006

FOOTNOTES
1:
Judi and Roger Freeman are unrelated to Kelli Freeman and her husband, Harry.  To avoid confusion, we will refer to the various Freemans by their first names.

2:
The principal of Arlington Entertainment is Dean Maddox.