COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-409-CV

IN THE INTEREST OF A.M.S.S., A CHILD 

------------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

In one point, Appellant Lola S. asserts that the trial court abused its discretion by denying Lola S.’s motion for new trial.  We affirm.

II.  Factual and Procedural Background

This is the case of the absent client.  Lola S. is the mother of A.M.S.S., who was born January 28, 2006.  At that time, Lola S. was in custody, but she was released approximately two months later.  The Texas Department of Family and Protective Services (“TDFPS”) placed A.M.S.S. with a relative, and A.M.S.S. continued to reside with this relative. 

TDFPS filed its original petition on September 22, 2005, concerning only Lola S.’s firstborn child, J.M., Jr.  TDFPS filed its second amended petition on March 15, 2006 concerning only the child A.M.S.S, and on October 17, 2006, the trial of this matter occurred.  Lola S. personally did not appear for trial but appeared through her counsel, Scott F. McKnight.  Lola S.’s trial counsel informed the trial court at the start of the trial that (1) he was ready for trial; (2) his office had been “in contact with [Lola S.] last week”; and (3) at that time, his office had informed Lola S. of the trial setting.  This was confirmed by testimony of a TDFPS caseworker at trial; Lola S. told the caseworker the day before trial began that (1) she knew about the upcoming trial and (2) she had spoken to her trial counsel’s office.  There was also evidence that she had not attended any of the hearings in connection with this case.

Following the trial, the trial court signed an order terminating Lola S.’s parental rights to A.M.S.S. on October 21, 2006.  After Lola S. learned that the trial court had terminated her parental rights, Lola S. filed a motion for new trial and later a first amended motion for new trial on November 15, 2006.  On November 20, 2006, the trial court denied the motion for new trial in open court, as noted on the docket sheet.

Lola S.’s affidavit filed in connection with her efforts to obtain a new trial stated that she did not receive written notice of trial.  Lola S. asserted that within the two-month period preceding the trial date, she had changed her residence.  She stated that she had submitted a change of address form to the U.S. Postal Service, requesting that her mail be forwarded to a post office box that she shared with her cousin.  The Postal Service did not initially forward the mail; instead, each item was returned to the sender.  The Postal Service apparently returned any mail not addressed to Lola S.’s cousin because the post office box account was under his name. 

In addition, Lola S. averred that she had begun participating in parenting classes and individual counseling, tasks which were on her TDFPS service plan, well before the date of trial and that she had completed these services after the trial date.  In addition, she had previously scheduled a psychological evaluation for October 18, 2006 (the day after the trial).  Further, she continued to visit A.M.S.S. while this case was pending.

Lola S.’s affidavit also stated that she has a meritorious defense to this suit.  Specifically, Lola S. stated that termination is not in the best interest of the child.  Lola S. also stated that the granting of a new trial would not result in any injury to TDFPS or the child who is the subject of this suit.  She did not deny that she had been told about the trial setting, however, but implied that she was unaware of it: “I would have appeared for trial if I had known about the trial date.”

III.  Denial of Motion for New Trial

In her sole point, Lola S. asserts that the trial court abused its discretion by denying her motion for new trial.

A.  Standard of Review

We review the denial of a motion for new trial under the abuse of discretion standard.  
Golden Eagle Archery, Inc. v. Jackson
, 24 S.W.3d 362, 372 (Tex. 2000).  Lola S. argues that the abuse of discretion standard is measured by the 
Craddock 
factors, citing 
Director, State Employees Workers’ Compensation Division v. Evans
, 889 S.W.2d 266, 268-71 (Tex. 1994), and 
Craddock v. Sunshine Bus Lines
,
 Inc.
, 134 Tex. 388, 392-93, 133 S.W.2d 124, 126 (1939).  These are default judgment cases.  The case before us is not a default judgment case because Lola S. answered the suit and her attorney appeared on her behalf at the trial.  We reject Lola S.’s assertion that we should apply the 
Craddock
 factors to this case before us.  Instead, when reviewing the trial court’s denial of a new trial, we must make every reasonable presumption in favor of the court’s ruling.  
See Fantasy Ranch, Inc. v. City of Arlington
, 193 S.W.3d 605, 612 (Tex. App.—Fort Worth 2006, pet. denied).

B.  The Evidence

As asserted by the State and confirmed by the record, the following evidence, inter alia, was adduced at trial: 

January 2005: The male child J.M., Jr. is born.  In the same month that J.M., Jr. is born, TDFPS receives a referral alleging possible physical abuse and neglectful supervision of J.M., Jr.  (Police were contacted regarding domestic dispute going on in the child’s household.)  After receiving the referral, TDFPS opens a case on Lola S.

May 20, 2005: Lola S. commits the crime of terroristic threat.  

June 23, 2005: Lola S. abandons six-month-old J.M., Jr. in a church and is incarcerated.  (Lola S. is jailed because she had outstanding warrants and traffic tickets.) 

July 7, 2005: Lola S. slashes J.M., Jr.’s father’s tires with a knife. Around this time, Lola S. has J.M., Jr.’s father’s utilities shutoff.

July 18, 2005: Lola S. hurls a large brick into J.M., Jr.’s father’s  house through a window.  (Lola S. had been calling J.M., Jr.’s father’s home all night and the police had been called; there was a note tied around the brick.) J.M., Jr. was in the home when Lola S. hurled the brick into the home through the window.

July 2005: Lola S. accuses her TDFPS caseworker of having an affair with J.M., Jr.’s father.  (Lola S. claimed that she “could smell” J.M., Jr.’s father on the caseworker.)

July/August 25, 2005: Lola S. circulates flyers in J.M., Jr.’s father’s neighborhood asserting that J.M., Jr.’s father has given her a sexually transmitted disease.  Around this same time, J.M., Jr.’s father’s house is vandalized.  (When J.M., Jr.’s father confronts Lola S., Lola S. denies that she is responsible.)

September 21, 2005: Lola S. tries to abscond with J.M., Jr. during a supervised visit at CPS’s office.  J.M., Jr. is removed from Lola S. and his father and placed in foster care.  A TDFPS caseworker recalled that Lola S. used to “taunt” J.M., Jr. during her visits with the child.

September 22, 2005: Lola S. firebombs J.M., Jr.’s father’s home the day after the twenty-four hour hearing.  (Lola S. is convicted of this offense on March 13, 2006.)

January 28, 2006: The female child A.M.S.S. is born.  Lola S. had been in a psychiatric ward almost the entire time that she was pregnant with A.M.S.S.  (Lola S. transferred from jail to the hospital in Wichita Falls.)  Since her birth, A.M.S.S. has lived with the Scott family.  (The Scotts are relatives of Lola S.)

March 2006: Lola S. is released from jail.

October 16, 2006: TDFPS caseworker (Rita Thompson) speaks to Lola S.  Lola S. acknowledges that she is aware of the next day’s trial and that she has been in contact with the office of defense counsel.  Lola S. did not indicate to the TDFPS caseworker whether Lola S. planned to attend the trial the next day.  Despite being notified of the prior hearing dates in this case, Lola S. had not attended any of the prior hearings.

October 17, 2006: Trial begins.

January/February 2007: Lola S. was due to give birth to her next child.

C.  The Order

In its Order of Termination, the trial court found as follows:

8.1. The Court finds by clear and convincing evidence that [Lola S.] has

8.1.1. knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;

8.1.2. engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;

8.2. The Court finds by clear and convincing evidence that termination of the parent-child relationship between [Lola S.] and the child the subject of this suit is in the child’s best interest. 

IV.  Conclusion

Under the circumstances of this case and after considering the evidence, the Order of Termination, and under the appropriate standard of review, we cannot say that the trial court abused its discretion by denying Lola S.’s motion for new trial.  Having overruled Lola S.’s sole point, we affirm the trial court’s judgment terminating Lola S.’s parental rights to A.M.S.S.

BOB MCCOY

JUSTICE

PANEL B: LIVINGSTON, WALKER, and MCCOY, JJ.

WALKER, J. concurs without opinion.

DELIVERED: May 31, 2007

 

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.