

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-22-00343-CV

———————————————

CAROLINE MICHELLE ANTOUN, Appellant

V.

GABY ELIAS ANTOUN, Appellee

On Appeal from the 367th District Court
Denton County, Texas
Trial Court No. 21-5535-367

Before Kerr, Bassel, and Wallach, JJ.
Opinion by Justice Wallach
Concurring Opinion by Justice Kerr

**OPINION**

For the first time in Texas since the United States Supreme Court's opinion in *Dobbs*,[1] we are now asked to determine the question of whether a trial court abused its discretion in awarding rights to frozen embryos in a divorce decree. Under the facts presented in this case, we hold that the trial court did not abuse its discretion. We will affirm the judgment of the trial court.

I. Background

Gaby Elias Antoun, Appellee (husband), and Caroline Michelle Antoun, Appellant (wife), married on or about August 4, 2014, and separated on or about July 20, 2021. They began IVF (in vitro fertilization) treatment in 2019. Fifteen eggs were removed, and fourteen were fertilized. Three of those eggs were implanted successfully. Those implants resulted in one miscarriage and two live births. Out of the fourteen fertilized embryos, seven of the embryos were sufficiently viable to be cryogenically preserved. Three of those seven embryos are currently in cryogenic storage. Those three cryogenically stored embryos are the subject of this dispute.

As part of the IVF process, the parties signed a document with the Dallas Fertility Center, LLC (the clinic) entitled "Consent Form Cryopreservation of Embryos" (the agreement) on May 10, 2019. The embryos are stored in Dallas, Texas, with the clinic. The storage of the embryos is addressed in the agreement, which

---

[1]*Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022).

provides that in the event of a divorce that the embryos are to be at the disposition of husband.

On November 22, 2021, wife filed a Second Amended Original Petition for Divorce and listed the children subject to the proceedings as the two children born of the marriage. She asked the court to divide their marital estate in a manner that the court deemed just and right, as provided by the law. On January 13, 2022, husband filed a First Amended Original Counterpetition for Divorce, which listed their children as the two children born of the marriage and asked the court to divide the marital estate in a manner that the court deemed just and right, as provided by law. Neither petition identified the disputed embryos as children.

On May 16, 2022, a Mediated Settlement Agreement (MSA) was filed based on the parties' agreement for custody, possession, and access to the identified children. The MSA did not resolve the marital property and embryo issues.

The parties commenced trial on June 29, 2022, and the court heard the property issues first and then heard the embryo issues separately. Both parties testified to the division of personal property, retirement assets, and debts. The court then heard testimony on the disposition of the embryos.

The agreement is a printed form bearing the name Dallas Fertility Center, LLC at the top with "Dallas-Ft. Worth Fertility Associates" directly below it. This is followed by the title "Consent Form Cryopreservation of Embryos." The first paragraph identifies "Caroline & Gaby Antoun" in handwriting as husband and wife

3

and as being the "undersigned." They both signed the agreement. Under the paragraph entitled "Joint Disposition," it states that the embryos are "subject to **our joint disposition** as limited by the conditions stated in this form" as limited by applicable law or by court decision and that "**we can jointly change** the directions for future disposition contained in this form" through appropriate written designation to the storage facility. [Emphasis added.] Under the paragraph entitled "Embryo Donation," it provides that "**we** may choose to donate our embryos to infertile couples." [Emphasis added.] Under the paragraph entitled **"Divorce or Death of Spouse,"** it provides that in the event of **divorce** or death of either spouse, "**the spouse given the dispositional authority over the frozen embryos by this agreement shall have the same dispositional authority that 'we' have under this Agreement."** [Emphasis added.] Finally, under the "Disposition of Others" paragraph, the agreement provides that, **in the event of divorce, husband and wife direct the storage facility to place the frozen embryos at the disposal of the husband (circled on the form from the options "Wife" or "Husband")**. [Emphasis added.] This line was initialed by both husband and wife.

The testimony at trial regarding the embryos showed the following:

a. The embryos remain cryogenically preserved. They are stored in Dallas, Texas, with the clinic. The storage of the embryos is subject to the agreement.

b. The agreement provides that the embryos are subject to husband's disposition in the event of divorce.

c. The agreement was admitted into evidence.

4

d. Wife testified that she signed the agreement.

e. Wife admitted that she read the agreement.

f. Husband testified he did not make wife sign the agreement.

g. Husband testified that he believed that both parties understood the agreement.

h. Husband testified that wife never told him that she did not understand the agreement.

i. Wife testified that she did not understand what she was signing, that she did not understand the agreement to be enforceable by either spouse against the other, that she did not intend to relinquish any future parental rights regarding the embryos, and that she did not intend for the embryos to be implanted in anyone other than herself.[2]

On June 29, 2022, the court awarded the embryos to husband per the agreement. The final order of divorce was judicially pronounced and rendered in court on June 29, 2022, and the judgment was signed on August 19, 2022. The judgment, in pertinent part, reads:

> IT IS ORDERED AND DECREED that the remaining frozen embryos stored at Dallas Fertility Center are awarded to [husband].
>
> [Husband] shall be responsible for all charges due or to become due in relation to the frozen embryos stored at Dallas Fertility Center.

---

[2]There were no verified pleadings by wife that the agreement was not supported by consideration. *See* Tex. R. Civ. P. 93(9). Likewise, wife did not plead fraud or duress as a defense to the agreement. *See* Tex. R. Civ. P. 94. Wife's contention in the trial court was (1) the agreement did not create a separately enforceable agreement between husband and wife, who are not in privity with each other for the agreement, and (2) the disposition of the embryo(s) as provided for by the contract functions as a relinquishment of parental rights in a manner non-compliant with the family code.

5

[Wife] is divested of all right, title, interest, and claim in and to the remaining frozen embryos stored at Dallas Fertility Center.

On July 26, 2022, wife filed a "Motion for Reconsideration of Disposition of Embryos After of [sic] Change in Law." On July 24, 2022, the United States Supreme Court issued its final judgment in the *Dobbs* case holding that the federal constitution does not provide a federal constitutional right to an abortion, and the authority to regulate abortions rests with the individual states. *Dobbs*, 142 S. Ct. at 2242. On August 1, 2022, wife's motion for reconsideration was denied, and the court signed an "Order [Denying] Petitioner's Motion for Reconsideration of Disposition of Embryos."

Wife contended that on August 26, 2022, triggered by the *Dobbs* decision, the Texas Human Life Protection Act took effect, having been codified in Texas Health and Safety Code Section 170A. On August 26, 2022, wife filed her motion for new trial, a notice of appeal, and a request for findings of fact and conclusions of law. The motion for new trial was overruled by operation of law. On September 28, 2022, the trial court signed Findings of Fact and Conclusions of Law. This appeal ensued.

II. Standards of Review

We review a trial court's denial of a motion for new trial based on an abuse of discretion standard. *Hogue v. Propath Lab'y, Inc.*, 192 S.W.3d 641, 647 (Tex. App.—Fort Worth 2006, pet. denied). "When reviewing the trial court's denial of a new trial, every reasonable presumption will be made in favor of the court's ruling." *Fantasy Ranch, Inc.*

6

*v. City of Arlington*, 193 S.W.3d 605, 612 (Tex. App.—Fort Worth 2006, pet. denied); *Hogue*, 192 S.W.3d at 647. The reviewing court will ultimately determine whether the trial court abused its discretion by acting without reference to any guiding rules or principles. *Marvelli v. Alston*, 100 S.W.3d 460, 483 (Tex. App.—Fort Worth 2003, pet. denied).

Regarding the standards for review for a division of a community estate,

[b]ecause the standards for dividing a community estate involve the exercise of sound judgment, a trial court must be accorded much discretion in its decision. The division should be corrected on appeal only where an abuse of discretion is shown in that the disposition made of some property is manifestly unjust and unfair. The appellate court cannot merely reweigh the evidence. Rather, a determination of whether the property division decreed in a divorce constitutes an abuse of discretion presents a legal rather than a factual question for appellate review. And in deciding that legal question, the trial court is entitled to no deference. A trial court has no discretion in determining what the law is or applying the law to the facts, even when the law is unsettled.

*Bradshaw v. Bradshaw*, 555 S.W.3d 539, 543 (Tex. 2018) (internal quotation marks and footnotes omitted); *see also Aleman v. Aleman*, No. 14-22-00313-CV, 2023 WL 3641122, at *1 (Tex. App.—Houston [14th Dist.] May 25, 2023, no pet. h.) (mem. op.).

III. Analysis

Wife raises five issues on appeal:

1. whether the trial court erred by failing to grant a new trial after an allegedly significant change in the law relating to the procedures by which the case was tried;

2. whether the trial court erred by treating the embryos as property;

3. whether there was "privity of contract" between husband and wife for purposes of making the contractual agreement between the couple and the IVF clinic separately binding between the husband and the wife;

4. whether the trial court terminated the "parental rights" of wife regarding the embryos in violation of the Family Code and without sufficient due process of law; and

5. whether the trial court created a gestational agreement regarding the embryos in violation of the Family Code.

Issues one, two, and four turn on the issue of whether the embryos are "unborn children." Because we answer that question in the negative as applied to the facts of this case, those points are overruled. Because we hold that there was an enforceable agreement between husband and wife regarding disposition of the embryos, we overrule issue three. Because the trial court did not create a gestational agreement by its judgment, we overrule issue five.

a. Issue 1

Citing *United States v. Schooner Peggy*, wife contends that the *Dobbs* opinion constituted a change in the "applicable" law, which justified granting a new trial. 5 U.S. (1 Cranch) 103, 110 (1801). The key word is "applicable." *Dobbs* held that the United States Constitution does not guarantee a right to an abortion. 142 S. Ct. at 2242. *Dobbs* did not determine the rights of cryogenically stored embryos outside the human body before uterine implantation. *Dobbs* is not law "applicable" to this case, and thus its pronouncement did not justify a new trial.

Texas has no statute that directly addresses the legal status of frozen fertilized embryos preserved outside the body before implantation in a uterus. To establish that such embryos are "children," not property, and subject to the Family Code provisions regarding child custody and gestational agreements, wife relies on Texas Health and Safety Code Section 170A.001(5), which became effective with the *Dobbs* decision. Section 170A.001(5) defines an "unborn child" as "an individual living member of the homo sapiens species from fertilization until birth, including the entire embryonic and fetal stages of development." According to wife, since the embryos were fertilized and then cryogenically preserved outside her body, they fall within this definition and are "unborn children."[3] *See* Tex. Health & Safety Code Ann. § 170A.001(5).

---

[3]Wife also argues that the *Dobbs* holding renewed the viability of this state's former abortion prohibition found in Texas Revised Civil Statute Article 4512.1. *See* Tex. Rev. Civ. Stat. Ann. art. 4512.1. Assuming such to be true, our analysis of Section 170A is equally applicable because Article 4512.1 is a prohibition of abortions on pregnant women, not a determination of the status of fertilized embryos cryogenically preserved outside a woman's body before implantation in the uterus. Wife also cites to Texas Penal Code Section 1.07(a)(26), which defines an "individual" as "a human being who is alive, including an unborn child at every stage of gestation from fertilization until birth." Tex. Penal Code Ann. § 1.07(a)(26). "Gestation" is not a defined term, so we look to its common ordinary meaning found in sources like dictionaries. *Kawcak v. Antero Resources Corp.*, 582 S.W.3d 566, 575 (Tex. App.—Fort Worth 2019, pet. denied). According to Merriam-Webster, "gestation" is defined as "the carrying of young in the uterus: Pregnancy." *Gestation*, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/gestation (last visited July 5, 2023). Similarly, Collins defines gestation as "the process in which babies grow inside their mother's body before they are born." *Gestation*, Collins Online Dictionary, https://www.collinsdictionary.com/dictionary/english/gestation (last visited July 5, 2023). And, as explained in DifferenceBetween.net,

9

Wife's argument is a classic example of taking a definition out of its legislatively created context and using it in a context that the legislature did not intend. The definition of "unborn child" relied upon by wife is found in Chapter 170A, entitled "Performance of Abortion." Section 170A.001(1) defines "abortion" as defined by Texas Health and Safety Code Section 245.002, which provides

> (1) "Abortion" means the act of using or prescribing an instrument, a drug, a medicine, or any other substance, device, or means with the intent **to cause the death of an unborn child of a woman known to be pregnant**. The term does not include birth control devices or oral contraceptives. An act is not an abortion if the act is done with the intent to:
>
> (A) save the life or preserve the health of an unborn child;

---

> Gestation is the period of time between conception/fertilization and birth. During this time, the baby **grows and develops inside the mother's womb. Gestation means carrying, to carry or to bear. Gestation is the carrying of an embryo or foetus inside the female's womb in mammals and non-mammalian species.** Pregnancy, more accurately, is the process and series of changes that take place in a woman's body and tissues as a result of the developing foetus. During a pregnancy, there can be one or more gestations occurring simultaneously; for example in case of twins.

*Difference between Gestation and Pregnancy*, Difference Between Similar Terms and Objects (June 21, 2018), http://www.differencebetween.net/science/health/difference-between-gestation-and-pregnancy-2/ (emphasis added). Wife admits in her brief that "IVF embryos, prior to being implanted are not gestating." Thus, we do not construe the Penal Code definition of an "individual" to include fertilized embryos cryogenically preserved outside a woman's body. A similar conclusion would arguably be reached under the wrongful death statute which defines an "individual" to include "an unborn child at every stage of gestation from fertilization until birth." Tex. Civ. Prac. & Rem. Code Ann. § 71.001(4).

(B) remove a dead, unborn child whose death was caused by spontaneous abortion; or

(C) remove an ectopic pregnancy.

Tex. Health & Safety Code Ann. § 245.002(1) (emphasis added). "Pregnant" is defined as "the female human reproductive condition of **having a living unborn child within the female's body during the entire embryonic and fetal stages of the unborn child's development from fertilization until birth**." Tex. Health & Safety Code Ann. § 170A.001(3) (Emphasis added).

These definitions are used to give meaning to the terms used in Section 170A.002, which prohibits "abortion" with certain exceptions. Thus, a **living unborn child**, i.e., one living in the body of a pregnant female, cannot have its life terminated by an abortion that is prohibited under Section 170A.002. These definitions, by the express wording of the statute, are not established to apply to any other situation. Section "170A.001. Definitions" begins with the prefatory phrase "In this chapter" and then defines "abortion," "pregnant," and "unborn child" among others. *Id.*; *see also KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 185 (Tex. 2019) (holding that defined term "transportation project" in Chapter 370 of the Transportation Code was intended to apply only to matters covered by that code since the definitions were made applicable to terms "in this chapter"). We therefore reject wife's argument that the cryogenically preserved fertilized embryos are "unborn children" for purposes of this proceeding. We overrule wife's issue number one.

11

b.  Issues 2 & 3

In issue two, wife contends that the trial court erred by treating the cryogenically preserved fertilized embryos as property. The crux of her argument is that the embryos are "unborn children" and not property. Our disposition of the first issue disposes of this argument as well.

In issue three, wife challenges whether there was "privity of contract" between husband and wife for purposes of making the contractual agreement between the couple and the IVF clinic separately binding between the husband and the wife. She argues that as the party seeking enforcement of the agreement, husband had the burden to prove that she had obligated herself under the contract.

There is persuasive authority in Texas, which pre-existed *Dobbs*, that supports the trial court's determination on both issues two and three. *Roman v. Roman*, 193 S.W.3d 40, 54–55 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). In *Roman*, the husband and wife entered into an agreement with the IVF clinic as part of their IVF treatment program. The agreement was substantially similar to the agreement in this case. It was entitled "Informed Consent for Cryopreservation of Embryo." *Id.* at 51. It provided that the embryos resulting from fertilization would be the "joint property" of both parties. *Id.* It provided for the disposition of the embryos if the parties should die, including that if only one of them died, then the surviving spouse would have full authority to decide what to do with the embryos. *Id.* It expressly provided that if the Romans divorced or filed for divorce while any of their frozen

12

embryos were in their program, the embryos should be discarded. *Id.* at 44. Both parties acknowledged signing the agreement and initialed the disposition paragraph. *Id.* at 52.

The trial court disregarded the parties' IVF agreement and awarded the embryos to the wife. *Id.* at 43. The court of appeals, after reviewing out of state authority on the enforceability of similar types of agreements and reviewing the elements of contract law in Texas, held that the trial court abused its discretion in awarding the embryos to the wife and reversed the judgment of the trial court. *Id.* at 54–55. The *Roman* court observed that, in addition to consideration, the following elements are required for a valid and binding contract to exist: (1) an offer, (2) acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Id.* at 50. The court held that the IVF Consent for Cryopreservation agreement was not against public policy in Texas, was enforceable as a contract between the Romans, and was clear and unambiguous that the Romans had agreed to discard the embryos in the event of divorce and, thus, that the trial court "improperly rewrote the parties' agreement." *Id.* at 54–55.

We hold that the agreement in this case met the requirements for an enforceable contract using the criteria described in *Roman,* that the terms of the agreement clearly and unambiguously set out the intent of the parties regarding their

mutual rights and responsibilities regarding the IVF process in general, and that the agreed upon disposition of the embryos in the event of divorce was for husband to have the right to dispose of the embryos.[4]

Wife argues that we should not follow *Roman*. However, since *Roman* was decided, no other Texas cases have addressed this issue. Prior to *Roman*, the legislature enacted laws dealing with assisted reproduction and gestational agreements,[5] but it had not, and has not since, addressed the legal status of frozen embryos or the rights to ownership or possession of frozen embryos upon the divorce of the parties creating the frozen embryos. We are persuaded that the legislature's failure to address

---

[4]Citing *Fidelity Lumber Co. v. Howell* and two other cases, wife argues that she and husband were not in privity with regard to the agreement because there is no legal privity between husband and wife. 206 S.W. 947, 950 (Tex. App.—Beaumont 1918), *aff'd*, *Howell v. Fid. Lumber Co.*, 228 S.W. 181, 182 (Tex. Comm'n App. 1921); *see also Smith v. Mount*, 851 F.2d 361 (9th Cir. 1988) (unpublished table decision); *Lansburgh & Bro. v. Clark*, 127 F.2d 331, 333 (D.C. Cir. 1942). The line of cases relied on by wife are inapplicable here because they do not address contractual privity and because husband did not claim privity with wife by virtue of their status as a married couple. He sought to enforce his rights under the contract that he and wife executed.

[5]In 2001, the legislature enacted the Uniform Parentage Act, dealing with assisted reproduction. Act of May 25, 2001, 77th Leg., R.S., ch. 821, § 1.01, 2001 Tex. Gen. Laws 1610, 1610–1626 (codified at Tex. Fam. Code §§ 160.701–.707). Certain amendments were enacted in 2007. *See* Act of May 27, 2007, 80th Leg., R.S., ch. 972 §§ 41–43, 2007 Tex. Gen. Laws. 3390, 3399–3400 (codified at Tex. Fam. Code Ann. §§ 160.704, 160.706–.707). In 2003, the legislature authorized gestational agreements. Act of May 23, 2003, 78th Leg., R.S., ch. 457, § 2, 2003 Tex. Gen. Laws 1699, 1699–1702 (codified at Tex. Fam. Code Ann. §§ 160.751–.763).

the holding in *Roman* indicates its acquiescence in its holding.[6] In matters of statutory construction, the legislature is free to rectify court interpretations or change its policy at any time, and the legislature's failure to act may constitute acquiescence in court interpretations. *See City of San Antonio v. Tenorio*, 543 S.W.3d 772, 779 (Tex. 2018). Though this situation is not precisely an issue of statutory construction, the *Roman* court put the legislature on notice of the significance of the issue and the need for legislative action in an area where the legislature had exercised its legislative prerogative. In the ensuing seventeen years, the legislature has done nothing to change the law as pronounced in *Roman*.

We hold that the trial court did not abuse its discretion in treating the embryos in question as property subject to contractual requirements between the parties.

c. Issue 4

In issue four, wife questions whether the trial court terminated the "parental rights" of wife regarding the embryos in violation of the Family Code and without sufficient due process of the law. The basis of wife's argument is that the embryos are "unborn children." Having ruled against wife on this point, we overrule her fourth issue.

d. Issue 5

---

[6]The *Roman* court noted, "We answer the issue with which we are presented as narrowly as possible in anticipation that the issue will ultimately be resolved by the Texas Legislature." *Roman*, 193 S.W.3d at 44.

15

In her fifth issue, wife questions whether the trial court created a gestational agreement regarding the embryos in violation of the Family Code. Wife contends that by awarding the embryos to husband and divesting her of any interest in them, that the court's order created a "gestational agreement" in violation of Section 160.754 of the Texas Family Code. We need look no further than the first sentence of Subsection (a) to determine that this argument is without merit. A "gestational agreement" is a written agreement between a prospective gestational mother, her husband if she is married, each donor, and each intended parent. *See* Tex. Fam. Code Ann. § 160.754(a). In this case, the court's judgment did two things: (a) it awarded the embryos to husband, and (b) it divested wife of all right, title, interest, and claim in and to the remaining frozen embryos. There is no involvement of any of a prospective gestational mother, her husband, and intended parent(s), and there is nothing about any of the other requirements for a gestational agreement set forth in Section 160.754. The trial court simply awarded the embryos to the husband and divested wife of any interest in them. We overrule wife's fifth issue.

IV. Conclusion

Having overruled all of wife's issues, we affirm the judgment of the trial court.


/s/ Mike Wallach
Mike Wallach
Justice

Delivered: July 13, 2023

16